**UNITED STATES of America,**

v.

**Oscar Antonio GRANDE, also known as "Pantera," Defendant.**

**No. CRIM.A. 04–283.**

United States District Court,
E.D. Virginia.
Alexandria Division.

Jan. 11, 2005.

624

Ronald L. Walutes, Jr., Esquire, Assistant United States Attorney, United States Attorney's Office, Patricia Giles, Esquire, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

David Preston Baugh, Esquire, Richmond, Luis Felipe Restrepo, Esquire, Krasner & Restepo, Philadelphia, PA., for Defense Attorneys.

### MEMORANDUM OPINION

LEE, District Judge.

THIS MATTER is before the Court on Defendant Oscar Antonio Grande's Motion to Strike Non–Statutory Aggravating Factors from the Government's Notice of Intent to seek the Death Penalty. Defendant Oscar Antonio Grande and three others are charged with (1) Conspiracy to Tamper with a Witness or an Informant, 18 U.S.C. § 1512(k), (2) Conspiracy to Retaliate Against a Witness or an Informant, 18 U.S.C. § 1513(e), (3) Killing a Person Aiding a Federal Investigation, 18 U.S.C. §§ 2 & 1121(a)(2), (4) Tampering with a Witness or an Informant, 18

U.S.C. §§ 2 & 1512(a)(1), and (5) Retaliating Against a Witness or an Informant, 18 U.S.C. §§ 2 & 1513(a)(1). The government filed a Notice of Intent to Seek a Sentence of Death against all four defendants on October 1, 2004. Defendant Oscar Antonio Grande moves the Court to strike various non-statutory aggravating factors asserted by the government pursuant to 18 U.S.C. § 3593(a)(2) and one statutory aggravating factor cited by the government pursuant to 18 U.S.C. § 3592(c). The issues before the Court are whether to strike (1) a statutory aggravating factor stating that a murder was committed in "an especially heinous, cruel, and depraved manner in that it involved torture and serious physical abuse" to the victim, because it is impermissibly vague, (2) various non-statutory aggravating factors because they are unconstitutionally irrelevant, vague, overbroad or double-counted, and (3) information in support of these statutory aggravating factors for irrelevance, impermissible prejudicial effect, or unreliability.

For the reasons stated below, the Court grants Defendant Oscar Antonio Grande's Motion to Strike as to non-statutory aggravating factors (1), (2) and (4), and as to supporting information (1)(a), (3)(c), (3)(d), (5)(c), (5)(d), and (5)(b) except for assaults and threats on correctional officers and fellow inmates not covered in any other aggravating factors. The Court denies Defendant Oscar Antonio Grande's Motion to Strike as to (1)(b), (3)(a), (3)(b), (3)(e), (3)(f), and (5)(a), (8) and (9).

## I. BACKGROUND

*Statutory Aggravating Factor No. 1*

Defendant Oscar Antonio Grande ("Defendant," "Mr. Grande") is charged with five counts relating to the murder of Ms. Brenda Paz (also known as "Smiley," "Ms. Paz"). In its Notice of Intent to Seek a Sentence of Death ("Notice") filed on October 1, 2004, the government expressed its intention to seek the death penalty for Mr. Grande, should he be convicted of any of the five counts alleged in the indictment. Apart from seeking to prove the necessary threshold findings as a basis for the imposition of the death penalty in relation to the various counts of the indictment as required by 18 U.S.C. § 3591(a)(2)(A)—(D), the government indicated it will seek to prove two statutory aggravating factors enumerated under 18 U.S.C. § 3592(c). Mr. Grande challenges the first of these two statutory aggravating factors: "1. Defendant OSCAR ANTONIO GRANDE, also known as 'Pantera,' committed the offense in an especially heinous, cruel, and depraved manner in that it involved torture and serious physical abuse to Brenda Paz, also known as 'Smiley.' 18 U.S.C. § 3592(c)(6)."

In support of his position, Mr. Grande asserts that since the drafting of the Federal Death Penalty Act, statutory aggravating factors are treated as elements of the offense, rather than mere sentencing findings. In other words, Mr. Grande argues that the defendant "must be given notice of the conduct it is alleged he engaged [in] to permit him the opportunity to explain or deny the allegation of engaging in such conduct." Mem. Law & Auth. Supp. Oscar Antonio Grande's Mot. Strike Non–Stat. Agg. Factors at 14 (hereinafter "Def.'s Mot. Strike"). According to Mr. Grande, because the aggravating factor solely tracks the statutory language, rather than delineating the specific method of torture or serious physical abuse, the Notice is legally insufficient and this statutory aggravating factor should be dismissed as vague and struck from the Notice. *Id.* at 15.

*Non–Statutory Aggravating Factors*

In its Notice, the government states that it will seek to prove ten additional non-

statutory aggravating factors pursuant to 18 U.S.C. §§ 3593(a) and (c). Under the factors concerning Mr. Grande's alleged pattern of juvenile criminal activity, pattern of adult criminal activity, and continuing threat to society, the government lists various facts to be proven. Notice at 3–6. Mr. Grande challenges the following non-statutory aggravating factors on the grounds of constitutional irrelevance, vagueness, overbreadth and for double-counting, and the information supporting them as irrelevant, more prejudicial than probative or unreliable:

1. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," engaged in a pattern of juvenile criminal activity as demonstrated by, but not limited to, the following:

(a) On or about April 14, 1999, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," assaulted a student at Fairfax High School.

(b) On or about April 17, 1999, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," solicited co-defendant Ismael Juarez Cisneros to stab a fifteen-year-old victim at the Fairfax Towne Center shopping center in retaliation for the victim preventing defendant GRANDE from further assaulting a fellow student at school. Defendant GRANDE was also armed with a knife during the attack on this student at the Fairfax Towne Center.

2. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," while a student in the Fairfax County school system, repeatedly engaged in misconduct that resulted in multiple suspensions, and his expulsion.

3. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," has engaged in a pattern of criminal activity as an adult as demonstrated by, but not limited to, the following:

(a) On or about April 25, 2002, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," pled guilty to Assault and Battery.

(b) On or about June 18, 2003, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," along with other members of the Mara Salvatrucha, also known as "MS–13," knocked an individual to the ground, struck him in the head with a large rock, and then kicked and stomped him. On or about May 19, 2004, defendant GRANDE pled guilty to Malicious Wounding and Street Gang Participation in Arlington, Virginia.

(c) On or about December 19, 2003, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," pled guilty to obstructing justice.

(d) Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," repeatedly carried a concealed weapon, namely a knife.

(e) Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," repeatedly hit Brenda Paz, also known as "Smiley," and threatened to kill her.

(f) Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," repeatedly abused females with whom he associated, including hitting, kicking, and threatening them with knives.

\* \* \* \* \* \*

4. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," was a member of a criminal street gang as defined by 18 U.S.C. § 521(a), namely Mara Salvatrucha, also known as MS–13." As a member of MS–13, defendant GRANDE agreed to engage in acts of violence, including murder and aggravating assaults. Defendant GRANDE was a senior member of Centrales Locos Sal-

vatrucha or "CLS," clique of MS–13, and as such was an enforcer of the rules of MS–13.

5. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," poses a future danger based upon the probability that he would commit criminal acts of violence that would constitute a continuing threat to society as demonstrated by, but not limited to, the following:

(a) While detained at the Arlington County Detention Facility and facing pending charges, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," threatened to kill an individual whom he believed had cooperated with law enforcement.

(b) While detained at the Arlington County Detention Facility, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," has shown poor institutional adjustment in that he has committed numerous disciplinary violations.

(c) While detained at the Arlington County Detention Facility, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," continued to conduct and influence MS–13 gang business occurring inside and outside of the correction institution.

(d) While detained at the Loudoun County Detention Center, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," along with other members of MS–13, caused a disturbance in the facility.

\* \* \* \* \* \*

8. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," committed Counts One, Two, Three, Four and Five of the Indictment to prevent Brenda Paz, also known as "Smiley," from and to retaliate against her for assisting in the investigation and prosecution of co-defendant Denis Riv-era for the murder of Joaquin Diaz, and in the investigation of other MS–13 members for their criminal activity.

9. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," attempted to obstruct justice after murdering Brenda Paz, also known as "Smiley," by threatening to kill anyone who revealed to law enforcement details of his and co-defendants Ismael Juarez Cisneros and Oscar Alexander Garcia–Orellana's departure from the Holiday Inn Fair Oaks with Brenda Paz, also known as "Smiley."

\* \* \* \* \* \*

## II. DISCUSSION

### A. Legal Framework

*Basic Sentencing Process and General Principles*

In *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), the Supreme Court affirmed that " '[t]he Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be . . . wantonly and . . . freakishly imposed.' " *Id.* at 774, 110 S.Ct. 3092 (citing *Gregg v. Georgia,* 428 U.S. 153, 188, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)) (quoting *Furman v. Georgia,* 408 U.S. 238, 310, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring)). Consequently, it is essential that a capital sentencing body's discretion "be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Id.* (quoting *Gregg,* 428 U.S. at 189, 96 S.Ct. 2909). Capital sentencing schemes must " 'channel the sentencer's discretion' by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.' " *Id.* (quoting *Godfrey*

*v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980)).

Sentencing in a federal capital case is composed of two discrete phases. *See* 18 U.S.C. § 3591 *et seq.* The first phase, "eligibility," requires the factfinder to determine whether the defendant qualifies for the death penalty, while the second phase, "selection," necessitates a decision as to whether a particular defendant "should in fact receive that sentence." *Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). In both the eligibility and selection inquiries, the process must be "neutral and principled so as to guard against bias or caprice in the sentencing decision." *Id.* at 973, 114 S.Ct. 2630 (citing *Gregg,* 428 U.S. at 189, 96 S.Ct. 2909) (joint opinion of Stewart, Powell, and Stevens, JJ.).

██ To be eligible for the death penalty in a homicide case, the factfinder must convict the defendant of capital murder, finding the requisite "intent" as delineated in 18 U.S.C. § 3591(a)(2). Next, it must find beyond a reasonable doubt the existence of at least one statutory aggravating factor for which the defendant received notice. *See* 18 U.S.C. §§ 3592(c)(1)—(16) & 3593(c) & (e); *see also Tuilaepa,* 512 U.S. at 971–72, 114 S.Ct. 2630; *U.S. v. Johnson,* 136 F.Supp.2d 553, 557–58 (W.D.Va.2001).

██ If the defendant is eligible for the death penalty, the factfinder proceeds to the selection phase. The jury must weigh aggravating factors proven by a reasonable doubt to the satisfaction of a unanimous jury against mitigating factors proven by a preponderance of the evidence found by at least one juror to make "an *individualized* determination on the basis of the character of the individual and the circumstances of the crime" of whether *this* defendant should receive a death sentence. *Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (citations omitted); *see also* 18 U.S.C.

§§ 3593(d)-(e) (requiring the factfinder to weigh mitigating and aggravating factors to determine whether a sentence of death is justified and discussing burdens of proof during sentencing). The aggravating factors may include non-statutory aggravating factors put forth by the government. 18 U.S.C. § 3593(a) (stating that aggravating factors may include "any other relevant information" provided that the government provides notice to the defendant).

*Non–Statutory Aggravating Factors*

██ The Court plays an important role in ensuring that sentencing is carried out in a manner consistent with the requirements of the Constitution. In other words, the Court's screening of aggravating factors is essential in channeling, directing and limiting the sentencer's discretion to prevent arbitrary and capricious imposition of the death penalty. *See Arave v. Creech,* 507 U.S. 463, 470–71, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993) (discussing the requirements of sentencing schemes). "[A]ggravating circumstances must be construed to permit the sentencer to make a principled distinction between those who deserve the death penalty and those who do not." *Jeffers,* 497 U.S. at 776, 110 S.Ct. 3092 (citation omitted). To come before the sentencer, an aggravating factor cannot be unconstitutionally vague, overbroad, duplicative or irrelevant. *See Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630 (vagueness); *Arave,* 507 U.S. at 474, 113 S.Ct. 1534 (overbreadth); *United States v. Tipton,* 90 F.3d 861, 899 (4th Cir.1996) (referencing the reasoning in *United States v. McCullah,* 76 F.3d 1087 (10th Cir.1996) with respect to double-counting); *Gregg,* 428 U.S. at 192, 96 S.Ct. 2909 (relevance); *United States v. Lentz,* 225 F.Supp.2d 666 (E.D.Va.2002) (discussing vagueness, overbreadth, double-counting, and relevance); *United States v. McVeigh,* 944 F.Supp. 1478, 1486 (D.Co.1996) ("[t]he

guiding principles for judicial determination of the validity of particular non-statutory aggravators is the death penalty jurisprudence developed by the Supreme Court").

Vague and overbroad aggravating circumstances are impermissible. An aggravator is vague if it lacks "some 'commonsense core of meaning...that criminal juries should be capable of understanding.'" *Tuilaepa*, 512 U.S. at 973, 114 S.Ct. 2630 (citing *Jurek v. Texas*, 428 U.S. 262, 279, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (White, J., concurring in judgment)). Vagueness review is "quite deferential" since it "is not susceptible of mathematical precision." *Id.* (citing *Walton v. Arizona*, 497 U.S. 639, 655, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)). A factor is overbroad if "the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty." *Arave*, 507 U.S. at 474, 113 S.Ct. 1534. In other words, if an aggravating factor applies to all defendants convicted of murder, it is unconstitutionally overbroad. *See Tuilaepa*, 512 U.S. at 972, 114 S.Ct. 2630 (stating the factor "may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder").

■ Unconstitutionally irrelevant or duplicative aggravating factors may not come before the jury either. A relevant factor is one that assists the sentencer "in distinguishing 'those who deserve capital punishment from those who do not...'" *McVeigh*, 944 F.Supp. at 1488 (quoting *Arave*, 507 U.S. at 474, 113 S.Ct. 1534). The aggravating factor must be "sufficiently relevant to the inquiry of who should live and who should die" to be considered by the sentencer. *Johnson*, 136 F.Supp.2d at 558 (quoting *United States v. Davis*, 912 F.Supp. 938, 943 (E.D.La.1996)). If the

aggravator has only a tangential relationship to a determination of who is more worthy of receiving a sentence of death, it should be excluded from the sentencer's review. Furthermore, the Federal Death Penalty Act and federal criminal jurisprudence have emphasized that relevant information is "particularized to the individual defendant." *United States v. Chong*, 98 F.Supp.2d 1110, 1116 (D.Hawai'i 1999) (citing *United States v. Frank*, 8 F.Supp.2d 253 (S.D.N.Y.1998)).

■ In addition, duplicative aggravating factors may pose constitutional problems. The Fourth Circuit has reasoned that aggravating factors that duplicate each other are prohibited; "a submission [of multiple overlapping aggravating circumstances]...that permits and results in cumulative findings of more than one of the...circumstances as an aggravating factor is constitutional error." *Tipton*, 90 F.3d at 899 (adopting the Tenth Circuit's reasoning in *McCullah*, 76 F.3d at 1111). The concern is that aggravating factors "that duplicate each other may impermissibly skew a jury in favor of imposing the death penalty." *United States v. Regan*, 228 F.Supp.2d 742, 751 (E.D.Va.2002) (quoting *United States v. Allen*, 247 F.3d 741, 789–90 (8th Cir.2001)). Although the sentencer may review information that duplicates elements of the underlying offense as an aggravating factor, it is constitutional error for the same aggravating factor to be considered by the sentencer more than once, even if dressed in new clothing. *Id.* (citations omitted).

*Admissibility of Information in Support of Aggravating Factors*

■ In deciding whether to admit information regarding aggravating factors at sentencing, the Court must ensure that it is relevant, reliable and less prejudicial than probative. *See* 18 U.S.C. § 3593(c)

(relevance, probative versus prejudicial value); *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (heightened reliability requirements in death penalty cases). At the same time, it should lean in favor of admitting as much information as possible to allow the jury to make an individualized determination of whether the defendant merits the death penalty. *Davis*, 912 F.Supp. at 941. The FDPA provides the following guidance:

> The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information [during the penalty phase] is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

18 U.S.C. § 3593(c). In sum, information submitted in the penalty phase must be relevant to the aggravating factors, and its probative value may not be outweighed by the danger of creating unfair prejudice. *Id.* In addition, the information must satisfy the "heightened reliability" requirements of capital sentencing, in light of the finality of the penalty. *See, e.g., Lockett*, 438 U.S. at 604, 98 S.Ct. 2954 ("We are satisfied that this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed"). At the same time, it is " 'desirable' for the jury to have 'as much information before it as possible' when deciding the penalty." *Davis*, 912 F.Supp. at 941 (quoting *Gregg*, 428 U.S. at 204, 96 S.Ct. 2909). Consequently, the Court must struggle with an often cited inherent tension in capital cases—between reliability and providing the jury with as much information as possible to make an individualized determination of whether the defendant merits the death penalty.

*See id.* at 941–943 (describing this tension through Supreme Court capital jurisprudence) (citing, *inter alia, Furman*, 408 U.S. 238, 92 S.Ct. 2726, *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977)).

## B. Statutory Factor No. 1:

*1. Defendant OSCAR ANTONIO GRANDE, also known as 'Pantera,' committed the offense in an especially heinous, cruel, and depraved manner in that it involved torture and serious physical abuse to Brenda Paz, also known as 'Smiley.' 18 U.S.C. § 3592(c)(6).*

■ The Court denies Defendant's motion to strike the first statutory aggravating factor in the Death Notice for vagueness because almost identical language has been previously upheld as proper so long as a limiting instruction is provided, and such an instruction is incorporated into this aggravating factor. In *Frank*, the Southern District of New York held that a statutory aggravating factor stating that "the defendant committed the offense in an especially heinous, cruel and depraved manner in that it involved torture or serious physical abuse to the victim" was proper when given with a limiting instruction. *Frank*, 8 F.Supp.2d at 277–78. The *Frank* court notes that the Supreme Court held that such a statutory factor by itself, "does not provide a jury with constitutionally sufficient guidance in distinguishing among murderers" in *Walton*. 8 F.Supp.2d at 277–78 (citing 497 U.S. at 653–54, 110 S.Ct. 3047). However, the court proceeds to explain, the Supreme Court in *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), held that this phrase could pass constitutional muster when given with "a limiting instruction stating that the murder involved 'some kind of torture or serious physical abuse.' "

*Id.* at 365, 108 S.Ct. 1853; *accord United States v. Minerd,* 176 F.Supp.2d 424, 438 (2001). As the *Frank* court points out, the necessary limiting language has been inserted into the statute itself, remedying the constitutional error raised in *Maynard. Frank,* 8 F.Supp.2d at 278. 18 U.S.C. § 3592(c) permits the sentencer to consider whether "[t]he defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim." 18 U.S.C § 3592(c)(6).[1] As to Mr. Grande's argument that the Court should strike this factor for not providing proper notice since it only tracks the language of the statute and does not describe the conduct at issue, the Court rejects this argument since "[t]he FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor . . . not notice of the specific evidence that will be used to support it." *United States v. Higgs,* 353 F.3d 281, 325 (4th Cir.2003) (citations omitted).

## C. Non–Statutory Factors

*1. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," engaged in a pattern of juvenile criminal activity as demonstrated by, but not limited to, the following:*

*(a) On or about April 14, 1999, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," assaulted a student at Fairfax High School.*

*(b) On or about April 17, 1999, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," solicited co-defendant Ismael Juarez Cisneros to stab a fifteen-year-old victim at the Fairfax*

*Towne Center shopping center in retaliation for the victim preventing defendant GRANDE from further assaulting a fellow student at school. Defendant GRANDE was also armed with a knife during the attack on this student at the Fairfax Towne Center.*

■ The Court strikes the first non-statutory aggravating factor because the Court finds that the government has failed to make out a "pattern" of juvenile criminal behavior. Alternatively stated, the Court finds that the information listed below non-statutory aggravating factor (1), in subheadings (a) and (b), is irrelevant to the assertion of the existence of a "pattern." Like the federal district court in *Chong,* this Court reasons that "information, to be relevant, must provide some evidence in support of a statutory or non-statutory aggravating factor alleged by the Government." 98 F.Supp.2d at 1117. Here, the information purportedly in support of the first non-statutory aggravating factor is irrelevant because it does not establish a pattern.

The relevant definition of the word "pattern" is "a combination of qualities, acts, tendencies, etc., forming a consistent or characteristic arrangement: *the behavior patterns of teenagers . . .* " Random House Webster's College Dictionary 971 (2001). The government's Notice and its supplemental submission to the Court make clear that (a) and (b) are factually intertwined. Not only are the two events only three days apart, but also, the police reports and interviews of witnesses submitted clarify that they involve the same victim. Through their investigation of the stab-

---

**1.** The Court notes that the government's proposed aggravating factor here states, in part, that the offense committed was "especially heinous, cruel, *and* depraved" rather than "especially heinous, cruel, *or* depraved," as the statutory language details. *Compare* No-

tice at 3 *with* 18 U.S.C. § 3592(c)(6). Nevertheless, the limiting language required by the Supreme Court is present; the aggravating factor states that the offense "involved torture and serious physical abuse." Notice at 3.

bing, the police learned from the stabbing victim that Mr. Grande had been involved in a fight at school with him three days before the stabbing. According to the victim, Mr. Grande witnessed a fight in a school hallway and jumped in. The victim grabbed Mr. Grande in an effort to keep him away from the fight. Then Mr. Grande jumped on a locker and kicked him. Three days later, Mr. Grande and another co-defendant in this case, Mr. Ismael Cisneros, approached the victim with knives drawn at Fairfax Towne Center, and Mr. Cisneros stabbed him four times in the back and once in the left wrist. The government's Notice includes only (a) and (b), and no other supporting facts under non-statutory aggravating factor (1) to establish a pattern of juvenile criminal conduct.

The Court finds that these two events do not evince a "combination of... acts... forming a consistent or characteristic arrangement" because they are only three days apart and involve the same two parties that were in the school fight, with the addition of Mr. Cisneros. *Id.* Since the government has listed only these two facts in support of its statement that the defendant was involved in a "pattern" of juvenile criminal activity, and the Court finds these insufficient to establish a "pattern," the Court strikes (1).

■ After striking non-statutory aggravating factor (1), the Court considers (a) and (b) individually, as independent non-statutory aggravating factors, to determine whether they may be brought before the jury. The Court strikes (a) because a high school fight is unconstitutionally irrelevant to the determination of "who should live and who should die." *See Johnson*, 136 F.Supp.2d at 558 (quoting *Davis*, 912 F.Supp. at 943). Furthermore, the Court notes that this is an unadjudicated high school fight. While unadjudicated conduct may be admissible,

it must be carefully monitored to avoid constitutional deficiencies. *See id.* at 562 (citing *Milton v. Procunier*, 744 F.2d 1091, 1097 (5th Cir.1984)). In addition, this case is distinguishable from *Higgs*, where the Fourth Circuit found unadjudicated criminal conduct admissible as a non-statutory aggravating factor, when that conduct consisted of impeding investigation of the murders the defendant was being tried for. 353 F.3d at 323. Here, the unadjudicated conduct is a high school fight that took place five years ago and is wholly unrelated to the murder that Mr. Grande is currently charged with.

■ The Court declines Defendant's invitation to strike (1)(b) because of the government's representation at oral argument that it is adjudicated conduct and because it is not vague, overbroad, irrelevant or duplicative of any other non-statutory aggravating factor presented. Furthermore, the Court notes that even though it appears that Mr. Grande did not himself stab the victim, he was present and apparently approached the victim brandishing a knife. Violent adjudicated conduct is information that should come before the jury during sentencing. *See Zant*, 462 U.S. at 888, 103 S.Ct. 2733 ("Nothing in the United States Constitution prohibits a trial judge from instructing a jury that it would be appropriate to take account of a defendant's prior criminal record in making its sentencing determination...even though the defendant's prior history of noncapital convictions could not *by itself* provide sufficient justification for imposing the death sentence"); *see also Williams v. New York*, 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed. 1760 (1949) (allowing trial court judges to consider a wide range of factors in sentencing, including past criminal conduct). Consequently, the Court will allow this non-statutory ag-

gravating factor to come before the jury as a free-standing non-statutory aggravating factor.

*2. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," while a student in the Fairfax County school system, repeatedly engaged in misconduct that resulted in multiple suspensions, and his expulsion.*

■ The Court strikes this factor because it is unconstitutionally irrelevant and vague. As a matter of law, whether Mr. Grande's high school career was marred by suspensions, or even an expulsion, is irrelevant to the jury's determination of whether Mr. Grande should live or die. *See Jeffers,* 497 U.S. at 776, 110 S.Ct. 3092 (stating that information before the sentencer must go to whether the defendant merits the penalty of death). Furthermore, as written, this proposed non-statutory aggravating factor is vague in this context because it lacks "some 'common-sense core of meaning...that criminal juries should be capable of understanding.'" *Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630 (citing *Jurek v. Texas,* 428 U.S. 262, 279, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (White, J., concurring in judgment)). "Misconduct" in the school system can range from failing to turn in homework to cutting class to assaulting a teacher. It is difficult to argue a correlation exists between a student's decision to cut class and subsequent suspension and the student's future dangerousness to society. The government's language simply does not sufficiently channel the jury's discretion in evaluating this non-statutory aggravating factor. The Court strikes this non-statutory aggravating factor because it is vague and immaterial to the jury's inquiry of whether Mr. Grande should receive the death penalty.

*3. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," has engaged in a pattern of criminal activity as an adult as demonstrated by, but not limited to, the following:*

*(a) On or about April 25, 2002, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," pled guilty to Assault and Battery.*

*(b) On or about June 18, 2003, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," along with other members of the Mara Salvatrucha, also known as "MS–13," knocked an individual to the ground, struck him in the head with a large rock, and then kicked and stomped him. On or about May 19, 2004, defendant GRANDE pled guilty to Malicious Wounding and Street Gang Participation in Arlington, Virginia.*

*(c) On or about December 19, 2003, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," pled guilty to obstructing justice.*

*(d) Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," repeatedly carried a concealed weapon, namely a knife.*

*(e) Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," repeatedly hit Brenda Paz, also known as "Smiley," and threatened to kill her.*

*(f) Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," repeatedly abused females with whom he associated, including hitting, kicking, and threatening them with knives.*

*Non–Statutory Aggravating Factor (3)*

■ The Court rejects Defendant's argument that the "as demonstrated by, but not limited to" language renders the factor unconstitutionally vague because the Court finds that the full text of factor (3) properly limits the scope of the factor, and it provides the defendant with adequate notice as required by the death penalty

statute. The government is not required to spell out the evidence it intends to use during sentencing. *See Higgs,* 353 F.3d at 325 ("The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor...not notice of the specific evidence that will be used to support it"); 18 U.S.C. § 3593(a) (requiring notice of non-statutory aggravating factors, not evidence supporting those factors). Because the words "criminal activity as an adult" have a common sense core of meaning as required by the Constitution—criminal activity over the age of eighteen—the Court holds that this non-statutory aggravating factor is not vague despite its use of the words "including, but not limited to." *See United States v. O'Driscoll,* 203 F.Supp.2d 334, 339 (M.D.Pa.2002) (permitting this language in a non-statutory aggravating factor regarding victim impact). In other words, the Court will allow the government to introduce Mr. Grande's criminal activity as an adult so long as it is relevant to the determination of a pattern of criminal activity as an adult justifying the death penalty and its probative value outweighs the danger of creating unfair prejudice, confusing the issues or misleading the jury. *See* 18 U.S.C. § 3593(c); *see also Zant,* 462 U.S. at 888, 103 S.Ct. 2733.

*Supporting Information (a) and (b)*

(a) On or about April 25, 2002, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," pled guilty to Assault and Battery.

(b) On or about June 18, 2003, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," along with other members of the Mara Salvatrucha, also known as "MS–13," knocked an individual to the ground, struck him in the head with a large rock, and then kicked and stomped him. On or about May 19, 2004, defendant GRANDE pled guilty to Malicious Wounding and Street Gang Participation in Arlington, Virginia.

The Court will not strike supporting information (a) and (b) concerning the rock attack on an unarmed victim because (a) and (b) are relevant to whether the defendant exhibits a pattern of violent adult criminal activity and they are not more prejudicial than probative. These subheadings refer to a brutal assault and adjudicated criminal conduct. Thus, (a) and (b) constitute relevant information that should come before the jury at sentencing.

*Supporting Information (c) and (d)*

(c) On or about December 19, 2003, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," pled guilty to obstructing justice.

(d) Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," repeatedly carried a concealed weapon, namely a knife.

The Court excludes (c) and (d), information relating to a conviction for obstruction of justice and allegations that the defendant repeatedly carried a knife, because they are more prejudicial than probative to the finding that Mr. Grande exhibits a pattern of adult criminal activity justifying the death penalty. 18 U.S.C. § 3593(c) specifies that during the sentencing phase of a capital trial, "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." *Id.* In the government's supplemental submission, the Court learned that Mr. Grande was fined $177 and given a suspended sentence of thirty days in jail as a result of his obstruction of justice plea.[2] The govern-

---

2. "Obstruction of justice" under Virginia law

encompasses a wide range of conduct, from

ment has provided no information describing the underlying conduct supporting the conviction. Nevertheless, because of the relatively low penalty, the Court cannot assume the underlying conduct was highly egregious.

For non-statutory aggravating factor (3) to be constitutionally relevant, a finding of a pattern of adult criminal activity must be significant in the determination of whether Mr. Grande should live or die. *See Jeffers*, 497 U.S. at 776, 110 S.Ct. 3092 (asserting that non-statutory aggravating factors must address whether a defendant merits the death penalty). Because the jury might give this relatively minor obstruction of justice conviction undue weight and make a finding of adult criminal activity justifying the death penalty, at least in part, because of the obstruction of justice guilty plea, the Court believes allowing its admission may mislead or confuse the jury. *Cf. Higgs*, 353 F.3d at 323 (admitting at sentencing a non-statutory aggravating factor of obstruction of justice and corresponding evidence when the defendant hid the murder weapon, destroyed physical evidence, lied to the police and told others to lie); *see also* 18 U.S.C. §§ 3592(c)(2)—(4) (listing as statutory aggravating factors "previous conviction of violent felony involving firearm," "previous conviction of offense for which a sentence of death or life imprisonment was authorized," and "previous conviction of other serious offenses...punishable by a term of imprisonment of more than 1 year...involving the infliction of, or attempted infliction of

serious bodily injury or death upon another person"). The same reasoning applies to subheading (d). Although carrying a concealed knife may be criminal conduct under Virginia law, a bare allegation, unspecified in time or event without some indication the weapon was carried to threaten or assault is not relevant to a finding of a pattern of adult criminal activity sufficient to justify the death penalty. The Court strikes these two subheadings from the Notice because evidence regarding the carrying of a knife or a guilty plea to a relatively minor obstruction of justice charge is more prejudicial than probative as to whether Mr. Grande exhibits a pattern of criminal activity as an adult justifying the death penalty.[3]

*Supporting Information (e) and (f)*

(e) Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," repeatedly hit Brenda Paz, also known as "Smiley," and threatened to kill her.

(f) Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," repeatedly abused females with whom he associated, including hitting, kicking, and threatening them with knives.

■ The Court denies Defendant's motion to strike non-statutory supporting information in subheadings (e) and (f), concerning threats and assaults on Ms. Paz, the alleged murder victim, and threats and assaults on other women, because these allegations are relevant to determining whether Mr. Grande exhibits a pattern of violent criminal behavior as an adult. If

---

talking back to a police officer to attempting to prevent a witness from appearing in court. *See* Va. Code Ann. § 18.2–460 (Michie 2004).

**3.** The Court imagines a situation where an identical non-statutory aggravating factor is put forth on a government notice of intention to seek the death penalty, but the supporting subheadings state that the defendant had ten speeding tickets over the course of five years. Although violating the law in this

way is, by definition, criminal, a finding of adult criminal activity *sufficient to justify the death penalty* would not be warranted. The non-statutory aggravating factor itself becomes unconstitutionally irrelevant to the determination of who should live and who should die, even though it may be true that the defendant committed the traffic violations and his behavior exhibits a pattern of flaunting traffic laws.

Mr. Grande repeatedly hit and threatened Ms. Paz, this is violent criminal conduct that is relevant to a finding of a pattern of adult criminal activity. The same applies to allegations of Mr. Grande's repeated threats and physical abuse of other women. Furthermore, the Court holds that the word "abuse" is not unconstitutionally vague since it has a "common-sense core of meaning" that criminal juries are capable of understanding. *Tuilaepa*, 512 U.S. at 973, 114 S.Ct. 2630 (citing *Jurek*, 428 U.S. at 279, 96 S.Ct. 2950 (White, J., concurring in judgment)). Also, as this Court ruled in *Lentz*, threats or acts of domestic violence are relevant information for sentencing and, if necessary, the Court will "limit introduction of evidence pertaining to such domestic abuse offenses or threats that withstand the evidentiary standard of 18 U.S.C. § 3593(c)." 225 F.Supp.2d at 671.

*4. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," was a member of a criminal street gang as defined by 18 U.S.C. § 521(a), namely Mara Salvatrucha, also known as MS–13." As a member of MS–13, defendant GRANDE agreed to engage in acts of violence, including murder and aggravating assaults. . Defendant GRANDE was a senior member of Centrales Locos Salvatrucha or "CLS," clique of MS–13, and as such was an enforcer of the rules of MS–13.*

 The Court strikes this non-statutory aggravating factor from the Notice because it does not assist the jury in making an *individualized* determination of whether Mr. Grande should receive the death penalty. "What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant*, 462 U.S. at 879, 103 S.Ct. 2733 (emphasis in original). Mr. Grande's membership in a gang will be more than obvious to the jury; he and his three co-

defendants are all admittedly members of MS–13 and Mr. Grande has "MS" or "MS–13" tattooed in places which will be visible to the jury. Furthermore, all four defendants are being tried jointly for the murder of a government informant. The purpose of the selection phase of sentencing is to focus on *this* individual's characteristics, not on the possible guilt of those with whom he associated. The non-statutory aggravating factor conflates the two: "As a member of MS–13, defendant GRANDE agreed to engage in acts of violence, including murder and aggravated assaults." Notice at 5. Furthermore, the Court is concerned about reliability with respect to this proposed non-statutory aggravating factor. It makes generalized statements about MS–13 as a group, including allegations of MS–13 engaging in uncharged murders and assaults, that are difficult, if not impossible, to cross-examine and which do not refer to Mr. Grande's individual acts or intentions in joining the gang. There has been a great deal of negative publicity in the news media associating MS–13 with violent acts including maiming victims with machetes, gang beatings, and assaults against female victims. The jury in this case is charged with rendering a verdict as to the conduct of Oscar Antonio Grande on a particular date, not the conduct of all members of MS–13 for an unlimited period of time. Consequently, the Court grants the defendant's motion to strike non-statutory aggravating factor number (4).

*5. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," poses a future danger based upon the probability that he would commit criminal acts of violence that would constitute a continuing threat to society as demonstrated by, but not limited to, the following:*

*(a) While detained at the Arlington County Detention Facility and facing pending charges, defendant OSCAR AN-*

TONIO GRANDE, also known as "Pantera," threatened to kill an individual whom he believed had cooperated with law enforcement.

(b) While detained at the Arlington County Detention Facility, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," has shown poor institutional adjustment in that he has committed numerous disciplinary violations.

(c) While detained at the Arlington County Detention Facility, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," continued to conduct and influence MS–13 gang business occurring inside and outside of the correction institution.

(d) While detained at the Loudoun County Detention Center, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," along with other members of MS–13, caused a disturbance in the facility.

*Non–Statutory Aggravating Factor (5)*

The Court denies Defendant's motion to strike the "as demonstrated by, but not limited to" language. Again, as previously stated, the government is not required to spell out exactly what evidence it will present in the penalty phase, only to give notice of the non-statutory aggravating factor. Furthermore, as required by 18 U.S.C. § 3593(c), the Court will ensure that evidence submitted to support this factor is relevant, sufficiently reliable, and not more prejudicial than probative.

*Supporting Information (a)*

(a) While detained at the Arlington County Detention Facility and facing pending charges, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," threatened to kill an individual whom he believed had cooperated with law enforcement.

 The Court denies Defendant's motion to strike supporting information (a),

referring to Mr. Grande's alleged threats to an individual who may have cooperated with law enforcement, because it is relevant to whether Mr. Grande poses a future danger to society. In addition, the Court finds this information to be in compliance with 18 U.S.C. § 3593(c), because it is sufficiently reliable and not more prejudicial than probative. Finally, if true, it is violent criminal conduct that should come before the jury at sentencing.

*Supporting Information (b) and (d)*

(b) While detained at the Arlington County Detention Facility, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," has shown poor institutional adjustment in that he has committed numerous disciplinary violations.

(d) While detained at the Loudoun County Detention Center, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," along with other members of MS–13, caused a disturbance in the facility.

 The Court grants Defendant's motion to strike the information in subheading (d), referring to Mr. Grande's participation in a "disturbance" at Loudoun County Detention Center, entirely, and subheading (b), referring to Mr. Grande's alleged "poor institutional adjustment" to the Arlington County Detention Center, to the extent that it is irrelevant to the non-statutory aggravating factor of Mr. Grande posing a future danger of committing criminal acts of violence. The government's supplemental submission to the Court discusses only two incidents of disciplinary violations. One involves throwing a dinner tray out of a slot at a correctional officer. The correctional officer was not injured; in his words, "[a]fter opening Inmate Grande's... foodslot he threw his dinner tray out of the slot striking me [in] the right knee, leaving food particles on my right pant leg. No medical attention was

required." The second involves a disturbance in Block No. 3 of the Loudoun Adult Detention Center. In that incident, spanning several hours, inmates housed in Block No. 3 put graffiti on the walls of their cells, refused to clean them, yelled and banged on bunks and bars. The inmates were ultimately sprayed with Oleoresin Capsicum spray. The correctional officer's report in no way singles out Mr. Grande's behavior. The report's only reference to Mr. Grande is in a list of all the inmates housed in Block No. 3 of the jail.

The Court finds that the first incident, of Mr. Grande pushing his food tray though a foodslot at a correctional officer, is irrelevant to the determination of whether Mr. Grande poses a future danger to society to justify the death penalty, although the Court appreciates that his conduct was wrongful. As to the second incident, of the group jail disturbance, the Court finds that it lacks the requisite indicia of reliability for an individualized determination of whether Mr. Grande deserves the death penalty since the report does not refer to Mr. Grande's behavior, but instead the behavior of all inmates in Block No. 3. Also, putting graffiti on walls or banging on bars does not speak to Mr. Grande's tendency to "commit criminal acts of violence," as stated in the aggravating factor. The Court will, however, admit any information that *is* relevant to this determination, including serious assaults on or threats to fellow inmates or correctional staff.

*Supporting Information (c)*

(c) *While detained at the Arlington County Detention Facility, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," continued to conduct and influence MS–13 gang business occurring inside and outside of the correction institution.*

■ The Court grants Defendant's motion to strike supporting information (c) of

non-statutory aggravating factor Number Five because the phrase "continued to conduct and influence MS–13 gang business" is vague and undefined, and thus, is more prejudicial than probative to whether Mr. Grande poses a future danger to society, and it will be confusing and misleading to the jury if permitted. The government has not defined what "gang business" is or what it means to "conduct and influence" gang business. Although the government is not required to present all the evidence it will use in support of an aggravating factor, the evidence in support of an aggravating factor must be reliable, must not mislead the jury or confuse the issues, and it must be more probative than prejudicial. 18 U.S.C. § 3593(c). Here, the vagueness of the words "gang business" confuses the issues and may be misleading to the jury. "Gang business" is not, of necessity, criminal. Having a conversation with a fellow gang member does not necessarily constitute a crime. Similarly, the meaning of "conduct and influence" is also unclear. Finally, as previously stated, the purpose of the sentencing phase is to determine whether this defendant is eligible for and deserving of the death penalty, not to try Mr. Grande's gang membership in and of itself or the gang he was a member of. Consequently, the Court grants Defendant's motion to strike supporting information (c) from the Notice.

8. *Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," committed Counts One, Two, Three, Four and Five of the Indictment to prevent Brenda Paz, also known as "Smiley," from and to retaliate against her for assisting in the investigation and prosecution of co-defendant Denis Rivera for the murder of Joaquin Diaz, and in the investigation of other MS–13 members for their criminal activity.*

■ The Court denies Defendant's motion to strike this factor for impermissible

double counting because the Fourth Circuit and the Supreme Court have rejected the argument that aggravating factors may not duplicate elements of the offense. *See Higgs*, 353 F.3d at 315 ("...the Eighth Amendment does not prohibit the use of an aggravating factor during the sentencing phases that duplicates one or more elements of the offense of the crime found at the guilt phase") (citing *Lowenfield v. Phelps*, 484 U.S. 231, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)).

9. *Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," attempted to obstruct justice after murdering Brenda Paz, also known as "Smiley," by threatening to kill anyone who revealed to law enforcement details of his and codefendants Ismael Juarez Cisneros and Oscar Alexander Garcia–Orellana's departure from the Holiday Inn Fair Oaks with Brenda Paz, also known as "Smiley."*

 The Court denies Defendant's motion to strike this aggravating factor as unconstitutionally vague and far removed from the purpose of non-statutory aggravating factors because the language has a common sense core of meaning and because obstruction of justice with respect to the underlying offense has frequently been deemed a proper non-statutory aggravating factor. Def.'s Mot. Strike at 35. Although the defendant summarily states that the aggravating factor is unconstitutionally vague, he does not point to any language in the factor that is vague, nor can the Court discern any "vague" language within the meaning of the applicable caselaw. *See, e.g., Tuilaepa*, 512 U.S. 967, 114 S.Ct. 2630. Furthermore, the Court holds that the factor is not unconstitutionally overbroad, duplicative or irrelevant. As the defendant's brief points out, obstruction of justice aggravating factors are common aggravating factors "where the defendant killed the victim in order to obstruct the investigation or prosecution of another offense." Def.'s Mot. Strike at 24 (citations omitted). The Court holds that threatening to kill potential witnesses is conduct intimately tied to the underlying offense and is almost, if not equally, as serious.

### III. CONCLUSION

The Court denies Defendant's motion to strike the first statutory aggravating factor because the Supreme Court upheld such language when provided with a limiting instruction in *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). *Id.* at 365, 108 S.Ct. 1853. The Court strikes non-statutory aggravating factor (1) because the two alleged facts listed in support of it do not establish a "pattern" of juvenile activity since they are factually intertwined because they are only three days apart and involve the same victim. Although it will allow evidence as to (1)(b), adjudicated juvenile criminal conduct, the Court will not allow evidence of the unadjudicated high school fight that preceded it because it is unconstitutionally irrelevant to the determination of who should live and who should die. The Court strikes non-statutory aggravating factor (2) because Defendant Oscar Antonio Grande's suspension or even expulsion from school is unconstitutionally irrelevant, and the use of the word "misconduct" in this context is unconstitutionally vague.

As to non-statutory aggravating factor (3), the Court rejects Defendant's argument that the "as demonstrated by, but not limited to" language renders the factor unconstitutionally vague because it finds that the full text of the factor sufficiently limits its scope, and it provides the defendant with adequate notice as required by the death penalty statute. The Court will not strike (a) and (b) because they are relevant to whether the defendant exhibits a pattern of adult criminal

activity and they are not more prejudicial than probative. The Court excludes (c) and (d) because they are more prejudicial than probative to the finding that Mr. Grande exhibits a pattern of adult criminal activity justifying the death penalty. The Court allows (e) and (f) because they are relevant to determining whether Mr. Grande exhibits a pattern of criminal activity as an adult.

The Court strikes non-statutory aggravating factor (4), regarding Defendant Oscar Antonio Grande's membership in a gang from the Notice because it does not assist the jury in making the requisite individualized determination of whether Mr. Grande should receive the death penalty.

The Court denies Defendant's motion to strike non-statutory aggravating factor (5) because of its "as demonstrated by, but not limited to" language because although the government is required to give notice of its non-statutory aggravating factors, it is not required to detail in advance the evidence it will use in support of these factors. The Court denies Defendant's motion to strike (a) because threatening to kill a person who cooperated with law enforcement is relevant to whether Defendant poses a future danger and continuing threat to society, and it is not more prejudicial than probative. Also, evidence of the defendant's past violent criminal conduct is highly probative and should come before the jury at sentencing. The Court strikes (b) because an inmate throwing a food tray through a slot does not speak to whether Mr. Grande exhibits a danger of committing criminal acts of violence constituting a continuing threat to society. The Court strikes (d) because the evidence of a group disturbance in the jail facility provided to the Court does not contain the requisite indicia of reliability since it does not refer specifically to Mr. Grande's behavior, but rather the conduct of all inmates in Block No. 3 at the Loudoun Adult Detention Center. Also, the Court strikes (c) because its language is so vague that it is more prejudicial than probative to whether Mr. Grande constitutes a future danger to society.

The Court denies Defendant's motion to strike non-statutory aggravating factor (8) because the Fourth Circuit and the Supreme Court have rejected the argument that aggravating factors may not duplicate elements of the offense. Finally, the Court denies Defendant's motion to strike non-statutory aggravating factor (9) as unconstitutionally vague and far removed from the purpose of non-statutory aggravating factors because the language has a common sense core of meaning and because obstruction of justice with respect to the underlying offense, by assaulting a witness, has frequently been deemed a proper non-statutory aggravating factor.

For the foregoing reasons, it is hereby

ORDERED that the Defendant's Motion to Strike Non–Statutory Aggravating Factors is GRANTED IN PART and DENIED IN PART.

The government is directed to strike the following from the Notice of Intent to Seek the Death Penalty:

(1), (1)(a), (2), (3)(c), (3)(d), (4), (5)(d), (5)(c), and (5)(b), except for assaults and threats on correctional officers and fellow inmates not covered in any other aggravating factors or supporting information.

The Clerk is directed to forward a copy of this Order to counsel of record.