UNITED STATES of America

v.

Denis RIVERA, Defendant.

No. CRIM. A. 04–283.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 22, 2005.

Ronald Walutes, Esquire, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Robert L. Jenkins, Jr., Esquire, Bynum & Jenkins, Alexandria, VA, for Defendant.

### MEMORANDUM OPINION

LEE, District Judge.

THIS MATTER is before the Court on Defendant Denis Rivera's Supplemental Memorandum in Support of Motion to Strike Non–Statutory Aggravating Factors.[1] Defendant Denis Rivera and three

---

1. Defendant Rivera's Preliminary Motion to Strike Non–Statutory Aggravating Factors will be addressed in a separate order.

others are charged with (1) Conspiracy to Tamper with a Witness or an Informant, 18 U.S.C. § 1512(k), (2) Conspiracy to Retaliate Against a Witness or an Informant, 18 U.S.C. § 1513(e), (3) Killing a Person Aiding a Federal Investigation, 18 U.S.C. §§ 2 & 1121(a)(2), (4) Tampering with a Witness or an Informant, 18 U.S.C. §§ 2 & 1512(a)(1), and (5) Retaliating Against a Witness or an Informant, 18 U.S.C. §§ 2 & 1513(a)(1). The government filed a Notice of Intent to Seek a Sentence of Death against all four defendants on October 1, 2004. In light of the Court's intervening decision in *United States v. Grande*, 353 F.Supp.2d 623 (E.D.Va.2005), addressing a similar motion by co-defendant Oscar Antonio Grande ("Mr. Grande," "Defendant Grande"), and on other grounds, Defendant Denis Rivera challenges various non-statutory aggravating factors asserted by the government pursuant to 18 U.S.C. §§ 3593(a) and(c), and the government's proposed supporting evidence. For the reasons stated below, the Court grants Defendant Denis Rivera's motion to strike (2), (4), and (5)(e), but it also grants the government's motion to substitute alternative language for (5)(e). The Court denies Mr. Rivera's motion to strike (1)(d), (5)(f), and (8).

## I. BACKGROUND

In its Notice of Intent to Seek a Sentence of Death ("Notice"), the government states that it will seek to prove ten non-statutory aggravating factors pursuant to 18 U.S.C. §§ 3593(a) and (c) in its effort to seek a death sentence against Mr. Denis Rivera ("Mr. Rivera," "Defendant"). Mr. Rivera challenges several non-statutory aggravating factors as a consequence of the Court's decision in *Grande*, as well as on other grounds. 353 F.Supp.2d 623. The following non-statutory aggravators and supporting evidence are objected to by Mr. Rivera:

1. Defendant DENIS RIVERA, also known as "Conejo," engaged in a pattern of juvenile criminal activity since the age of twelve (12) including, but not limited to, the following:

 \* \* \* \* \* \*

(d) On or about September 20, 1999, defendant DENIS RIVERA, also known as "Conejo," participated in a physical altercation with a rival gang in Alexandria, Virginia.

 \* \* \* \* \* \*

2. Defendant DENIS RIVERA, also known as "Conejo," while a student in the Alexandria City school system, repeatedly engaged in misconduct that resulted in multiple suspensions.

 \* \* \* \* \* \*

4. Defendant DENIS RIVERA, also known as "Conejo," was a member of a criminal street gang as defined by 18 U.S.C. § 521(a), namely the Mara Salvatrucha, also known as "MS–13." As a member of MS–13, defendant RIVERA agreed to engage in acts of violence including murder, malicious woundings, and aggravated assaults. Defendant RIVERA was the leader of the Big Gangsters Locos Salvatrucha, or "BGLS," clique of MS–13.

5. Defendant DENIS RIVERA, also known as "Conejo," poses a future danger based upon the probability that he would commit criminal acts of violence that would constitute a continuing threat to society as demonstrated by, but not limited to, the following:

 \* \* \* \* \* \*

(e) While in custody prior to and after his conviction for the murder of Joaquin Diaz, defendant DENIS RIVERA, also known as "Conejo," continued to conduct and influence MS–13

gang business occurring inside and outside the correctional institution.

(f) While in custody prior to and after his conviction for the murder of Joaquin Diaz, defendant DENIS RIVERA, also known as "Conejo," has shown poor institutional adjustment in that he has committed numerous disciplinary violations.

\* \* \* \* \* \*

8. Defendant DENIS RIVERA, also known as "Conejo," has demonstrated a lack of remorse toward the death of Brenda Paz, also known as "Smiley," and instead has expressed delight in her death.

\* \* \* \* \* \*

## II. DISCUSSION

### A. Legal Framework

*Basic Sentencing Process and General Principles*

■ In *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), the Supreme Court affirmed that " '[t]he Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be...wantonly and...freakishly imposed.' " *Id.* at 774, 110 S.Ct. 3092 (citing *Gregg v. Georgia*, 428 U.S. 153, 188, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)) (joint opinion of Stewart, Powell, and Stevens, JJ.) (quoting *Furman v. Georgia*, 408 U.S. 238, 310, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring)). Consequently, it is essential that a capital sentencing body's discretion "be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Id.* (quoting *Gregg*, 428 U.S. at 189, 96 S.Ct. 2909). Capital sentencing schemes must " 'channel the sentencer's discretion' by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.' " *Id.* (quoting *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980)).

■ Sentencing in a federal capital case is composed of two discrete phases. *See* 18 U.S.C. § 3591 *et seq.* The first phase, "eligibility," requires the factfinder to determine whether the defendant qualifies for the death penalty, while the second phase, "selection," necessitates a decision as to whether a particular defendant "should in fact receive that sentence." *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). In both the eligibility and selection inquiries, the process must be "neutral and principled so as to guard against bias or caprice in the sentencing decision." *Id.* at 973, 114 S.Ct. 2630 (citing *Gregg*, 428 U.S. at 189, 96 S.Ct. 2909) (joint opinion of Stewart, Powell, and Stevens, JJ.).

To be eligible for the death penalty in a homicide case, the factfinder must convict the defendant of capital murder, finding the requisite "intent" as delineated in 18 U.S.C. § 3591(a)(2). Next, it must find beyond a reasonable doubt the existence of at least one statutory aggravating factor for which the defendant received notice. *See* 18 U.S.C. §§ 3592(c)(1)—(16) & 3593(c) & (e); *see also Tuilaepa*, 512 U.S. at 971–72, 114 S.Ct. 2630; *U.S. v. Johnson*, 136 F.Supp.2d 553, 557–58 (W.D.Va.2001).

If the defendant is eligible for the death penalty, the factfinder proceeds to the selection phase. The jury must weigh aggravating factors proven by a reasonable doubt to the satisfaction of a unanimous jury against mitigating factors proven by a preponderance of the evidence found by at least one juror to make "an *individualized* determination on the basis of the character of the individual and the circumstances of the crime" of whether *this* defendant

should receive a death sentence. *Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (citations omitted); *see also* 18 U.S.C. §§ 3593(d)-(e) (requiring the factfinder to weigh mitigating and aggravating factors to determine whether a sentence of death is justified and discussing burdens of proof during sentencing). The aggravating factors may include non-statutory aggravating factors put forth by the government. 18 U.S.C. § 3593(a) (stating that aggravating factors may include "any other relevant information" provided that the government provides notice to the defendant).

*Non–Statutory Aggravating Factors*

■ The Court plays an important role in ensuring that sentencing is carried out in a manner consistent with the requirements of the Constitution. In other words, the Court's screening of aggravating factors is essential in channeling, directing and limiting the sentencer's discretion to prevent arbitrary and capricious imposition of the death penalty. *See Arave v. Creech,* 507 U.S. 463, 470–71, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993) (discussing the requirements of sentencing schemes). "[A]ggravating circumstances must be construed to permit the sentencer to make a principled distinction between those who deserve the death penalty and those who do not." *Jeffers,* 497 U.S. at 776, 110 S.Ct. 3092 (citation omitted). To come before the sentencer, an aggravating factor cannot be unconstitutionally vague, overbroad, duplicative or irrelevant. *See Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630 (vagueness); *Arave,* 507 U.S. at 474, 113 S.Ct. 1534 (overbreadth); *United States v. Tipton,* 90 F.3d 861, 899 (4th Cir.1996) (referencing the reasoning in *United States v. McCullah,* 76 F.3d 1087 (10th Cir.1996) with respect to double-counting); *Gregg,* 428 U.S. at 192, 96 S.Ct. 2909 (relevance); *United States v. Lentz,* 225

F.Supp.2d. 666 (E.D.Va.2002) (discussing vagueness, overbreadth, double-counting, and relevance); *United States v. McVeigh,* 944 F.Supp. 1478, 1486 (D.Co.1996) ("[t]he guiding principles for judicial determination of the validity of particular non-statutory aggravators is the death penalty jurisprudence developed by the Supreme Court").

■ Vague and overbroad aggravating circumstances are impermissible. An aggravator is vague if it lacks "some 'common-sense core of meaning...that criminal juries should be capable of understanding.'" *Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630 (citing *Jurek v. Texas,* 428 U.S. 262, 279, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (White, J., concurring in judgment)). Vagueness review is "quite deferential" since it "is not susceptible of mathematical precision." *Id.* (citing *Walton v. Arizona,* 497 U.S. 639, 655, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)). A factor is overbroad if "the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty." *Arave,* 507 U.S. at 474, 113 S.Ct. 1534. In other words, if an aggravating factor applies to all defendants convicted of murder, it is unconstitutionally overbroad. *See Tuilaepa,* 512 U.S. at 972, 114 S.Ct. 2630 (stating the factor "may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder").

■ Unconstitutionally irrelevant or duplicative aggravating factors may not come before the jury either. A relevant factor is one that assists the sentencer "in distinguishing 'those who deserve capital punishment from those who do not ...'" *McVeigh,* 944 F.Supp. at 1488 (quoting *Arave,* 507 U.S. at 474, 113 S.Ct. 1534). The aggravating factor must be "sufficiently relevant to the inquiry of who should live and who should die" to be considered

by the sentencer. *Johnson*, 136 F.Supp.2d at 558 (quoting *United States v. Davis*, 912 F.Supp. 938, 943 (E.D.La.1996)). If the aggravator has only a tangential relationship to a determination of who is more worthy of receiving a sentence of death, it should be excluded from the sentencer's review. Furthermore, the Federal Death Penalty Act and federal criminal jurisprudence have emphasized that relevant information is "particularized to the individual defendant." *United States v. Chong*, 98 F.Supp.2d 1110, 1116 (D.Hawai'i 1999) (citing *United States v. Frank*, 8 F.Supp.2d 253 (S.D.N.Y.1998)).

■ In addition, duplicative aggravating factors may pose constitutional problems. The Fourth Circuit has reasoned that aggravating factors that duplicate each other are prohibited; "a submission [of multiple overlapping aggravating circumstances] ...that permits and results in cumulative findings of more than one of the...circumstances as an aggravating factor is constitutional error." *Tipton*, 90 F.3d at 899 (adopting the Tenth Circuit's reasoning in *McCullah*, 76 F.3d at 1111). The concern is that aggravating factors "that duplicate each other may impermissibly skew a jury in favor of imposing the death penalty." *United States v. Regan*, 228 F.Supp.2d 742, 751 (E.D.Va.2002) (quoting *United States v. Allen*, 247 F.3d 741, 789–90 (8th Cir.2001)). Although the sentencer may review information that duplicates elements of the underlying offense as an aggravating factor, it is constitutional error for the same aggravating factor to be considered by the sentencer more than once, even if dressed in new clothing. *Id.* (citations omitted).

*Admissibility of Information in Support of Aggravating Factors*

■ In deciding whether to admit information regarding aggravating factors

at sentencing, the Court must ensure that it is relevant, reliable and less prejudicial than probative. *See* 18 U.S.C. § 3593(c) (relevance, probative versus prejudicial value); *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (heightened reliability requirements in death penalty cases). At the same time, it should lean in favor of admitting as much information as possible to allow the jury to make an individualized determination of whether the defendant merits the death penalty. *Davis*, 912 F.Supp. at 941. The FDPA provides the following guidance:

> The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information [during the penalty phase] is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

18 U.S.C. § 3593(c). In sum, information submitted in the penalty phase must be relevant to the aggravating factors, and its probative value may not be outweighed by the danger of creating unfair prejudice. *Id.* In addition, the information must satisfy the "heightened reliability" requirements of capital sentencing, in light of the finality of the penalty. *See, e.g., Lockett*, 438 U.S. at 604, 98 S.Ct. 2954 ("We are satisfied that this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed"). At the same time, it is " 'desirable' for the jury to have 'as much information before it as possible' when deciding the penalty." *Davis*, 912 F.Supp. at 941 (quoting *Gregg*, 428 U.S. at 204, 96 S.Ct. 2909). Consequently, the Court must struggle with an often cited

inherent tension in capital cases—between reliability and providing the jury with as much information as possible to make an individualized determination of whether the defendant merits the death penalty. *See id.* at 941–943 (describing this tension through Supreme Court capital jurisprudence) (citing, *inter alia, Furman,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977)).

## B. Analysis of Non–Statutory Aggravating Factors

*1. Defendant DENIS RIVERA, also known as "Conejo," engaged in a pattern of juvenile criminal activity since the age of twelve (12) including, but not limited to, the following:*

\*　　\*　　\*　　\*　　\*　　\*

*(d) On or about September 20, 1999, defendant DENIS RIVERA, also known as "Conejo," participated in a physical altercation with a rival gang in Alexandria, Virginia.*

 The Court denies Mr. Rivera's motion to strike (1)(d), because the Court rejects Mr. Rivera's argument that this gang fight is analogous to non-statutory aggravator (1)(a) that the Court struck from the Notice of Intent to Seek a Sentence of Death filed by the government against Defendant Grande. *See Grande,* 353 F.Supp.2d at 633–34. In Mr. Grande's Notice, non-statutory aggravator (1) stated:

1. Defendant OSCAR ANTONIO GRANDE, also known as "Pantera," engaged in a pattern of juvenile criminal activity as demonstrated by, but not limited to, the following:

(a) On or about April 14, 1999, defendant OSCAR ANTONIO GRANDE, also known as "Pantera" assaulted a student at Fairfax High School.

(b) On or about April 17, 1999, defendant OSCAR ANTONIO GRANDE, also known as "Pantera," solicited co-defendant Ismael Juarez Cisneros to stab a fifteen-year-old victim at the Fairfax Towne Center shopping center in retaliation for the victim preventing defendant GRANDE from further assaulting a fellow student at school. Defendant GRANDE was armed with a knife during the attack on this student . . .

*Id.* The Court struck aggravating factor (1) because it found the government "failed to make out a 'pattern' of juvenile criminal behavior" since both incidents were only three days apart and involved the same victim. *Id.* It then considered (1)(a) and (1)(b) as freestanding non-statutory aggravating factors. *Id.* Once (1)(a) became a potential freestanding non-statutory aggravator, the Court had to consider whether it was unconstitutionally irrelevant, overbroad, vague or duplicative. *See id.* at 630–31. The Court found that, as a freestanding non-statutory aggravator, (1)(a) was "unconstitutionally irrelevant to the determination of who should live and who should die." *Id.* at 634.

In Mr. Rivera's Notice, subheading (d) is simply information put forth in support of the government's non-statutory aggravator, namely, that Mr. Rivera exhibits a "pattern of juvenile criminal activity." Notice at 3. Consequently, the Court need only consider whether the gang fight is relevant to showing a pattern of juvenile criminal activity, whether it is reliable, and whether it is less prejudicial than probative. *See* 18 U.S.C. § 3593(c) (relevance, probative versus prejudicial value); *Lockett,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (discussing heightened reliability requirements in death penalty cases).

The Court denies Mr. Rivera's motion to strike (1)(d) because the Court finds that Mr. Rivera's participation in a gang fight, when coupled with the five other criminal acts listed in the Notice, is relevant, reliable, and more probative than prejudicial to determining whether Mr. Rivera exhibits a pattern of juvenile criminal activity.

*2. Defendant DENIS RIVERA, also known as "Conejo," while a student in the Alexandria City school system, repeatedly engaged in misconduct that resulted in multiple suspensions.*

■■■■ The Court grants Mr. Rivera's motion to strike non-statutory aggravating factor (2) because it is unconstitutionally irrelevant and vague. *See Grande,* 353 F.Supp.2d at 635 (striking a virtually identical non-statutory aggravating factor). As a matter of law, whether Mr. Rivera's high school career was marred by suspensions, or even an expulsion, is irrelevant to the jury's determination of whether Mr. Rivera should live or die. *See Jeffers,* 497 U.S. at 776, 110 S.Ct. 3092 (stating that information before the sentencer must go to whether the defendant merits the penalty of death). Furthermore, as written, this proposed non-statutory aggravating factor is vague in this context because it lacks "some 'common-sense core of meaning...that criminal juries should be capable of understanding.'" *Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630 (citing *Jurek v. Texas,* 428 U.S. 262, 279, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (White, J., concurring in judgment)). "Misconduct" in the school system can range from failing to turn in homework to cutting class to assaulting a teacher. It is difficult to argue a correlation exists between a student's decision to cut class and subsequent suspension and the student's future dangerousness to society. The government's language simply does not sufficiently channel the jury's discretion in evaluating this non-statutory aggravating factor. The Court strikes this non-statutory aggravating factor because it is vague and immaterial to the jury's inquiry of whether Mr. Rivera should receive the death penalty.

*4. Defendant DENIS RIVERA, also known as "Conejo," was a member of a criminal street gang as defined by 18 U.S.C. § 521(a), namely the Mara Salvatrucha, also known as "MS–13." As a member of MS–13, defendant RIVERA agreed to engage in acts of violence including murder, malicious woundings, and aggravated assaults. Defendant RIVERA was the leader of the Big Gangsters Locos Salvatrucha, or "BGLS," clique of MS–13.*

■■ The Court grants Mr. Rivera's motion to strike this non-statutory aggravator from the Notice because it does not assist the jury in making an individualized determination of whether Mr. Rivera should receive the death penalty. *See Grande,* 353 F.Supp.2d at 637–38 (striking a nearly identical non-statutory aggravating factor). "What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant,* 462 U.S. at 879, 103 S.Ct. 2733 (emphasis in original). Mr. Rivera's membership in a gang will be more than obvious to the jury: he and his three co-defendants are all admittedly members of MS–13, MS–13 members will testify at the trial, and all four defendants are being tried jointly for the murder of a government informant who was also a member of MS–13. The purpose of the selection phase of sentencing is to focus on *this* individual's characteristics, not on the possible guilt of those with whom he associated. The non-statutory aggravating factor conflates the two: "As a member of MS–13, defendant RIVERA agreed to engage in acts of violence, including murder, mali-

cious woundings, and aggravated assaults." Notice at 5. Furthermore, the Court is concerned about reliability with respect to this proposed non-statutory aggravating factor. It makes generalized statements about MS–13 as a group, including allegations of MS–13 engaging in uncharged murders and assaults, that are difficult, if not impossible, to cross-examine and which do not refer to Mr. Rivera's individual acts or intentions in joining the gang. There has been a great deal of negative publicity in the news media associating MS–13 with violent acts including maiming victims with machetes, gang beatings, and assaults against female victims, including a recent nationwide sweep of MS–13 members. The jury in this case is charged with rendering a verdict as to the conduct of Denis Rivera on a particular date, not the conduct of all members of MS–13 for an unlimited period of time. Consequently, the Court grants the defendant's motion to strike non-statutory aggravating factor (4). The Court also notes that the government has moved to withdraw this non-statutory aggravator. Gov't's Opp'n Def. Rivera's Suppl. Mot. Strike (hereinafter "Gov't's Suppl. Opp'n") at 2 n. 4. The Court directs the government to do so.

*5. Defendant DENIS RIVERA, also known as "Conejo," poses a future danger based upon the probability that he would commit criminal acts of violence that would constitute a continuing threat to society as demonstrated by, but not limited to, the following:*

&#42; &#42; &#42; &#42; &#42; &#42;

*(e) While in custody prior to and after his conviction for the murder of Joaquin Diaz, defendant DENIS RIVERA, also known as "Conejo," continued to conduct and influence MS–13 gang business occurring inside and outside the correctional institution.*

*(f) While in custody prior to and after his conviction for the murder of Joaquin Diaz, defendant DENIS RIVERA, also known as "Conejo," has shown poor institutional adjustment in that he has committed numerous disciplinary violations.*

*Analysis of 5(e)*

■ The Court grants Defendant's motion to strike (5)(e), but it also grants the government's motion to substitute its reformulated language for (5)(e) because the alternative language is clear and unambiguous. The Court struck language identical to (5)(e) in *Grande* because it found that terms like "gang business" and "conduct and influence" might be "vague and misleading" to the jury. 353 F.Supp.2d at 640. In light of the Court's decision in *Grande*, the government proposed the following alternative language for supporting information:

> While in custody prior to and after his conviction for the murder of Joaquin Diaz, defendant DENIS RIVERA, also known as "Conejo," continued to plan and direct the criminal activity of other MS–13 members who were outside the correctional institution.

Gov't's Suppl. Opp'n at 4–7.

The Court grants the government's motion to substitute this language because it is clear and unambiguous about what the government intends to prove in support of the "continuing threat to society" non-statutory aggravating factor. In addition, the Court notes the supporting transcripts of phone calls made by Mr. Rivera from the Arlington and Fairfax Detention Facilities in the summer of 2003 illustrating how Mr. Rivera may have planned or directed criminal activities of MS–13 while in jail. In a July 31, 2003 phone call, Mr. Rivera directs an individual known as "Joker" to tell an individual known as "Philosopher" when

and where a meeting of gang members will take place. *Id.*, Attachment 1 at 2–3. Philosopher then asks, "Do you want the homeboys to drop by?," and Mr. Rivera answers, "Right, but first I will tell the homeboys where it is going to take place." *Id.* at 3. Mr. Rivera then tells Philosopher and Joker, "You [all] have to go. Call all the homies, call Casper, everybody homes. Tell them to call Arana, and call Little Chato, but make the calls tonight, homes." *Id.* Later in the conversation, Mr. Rivera tells Philosopher, "Tell Boxer, Trece, USI, have a bunch of homeboys show up." *Id.* at 5. In addition, in a phone call made on August 6, 2003, Mr. Rivera asked a fellow gang member to identify a rival gang member's jail visitor, to "mark" him and to "break his head." Gov't's Suppl. Opp'n, Exhibit 2 at 23–24.

*Analysis of 5(f)*

■ The Court denies Mr. Rivera's motion to strike (5)(f) because Mr. Rivera's disciplinary record is relevant to whether he poses a "continuing threat to society." In *Grande*, the Court struck language identical to (5)(f) from the Notice of Intent to Seek a Sentence of Death in Mr. Grande's case because the Court was able to discern only one disciplinary incident from the proffer provided by the government—pushing a tray through a food slot at a correctional officer resulting in no injury to the officer. 353 F.Supp.2d at 640. The Court found it was "irrelevant to the determination of whether Mr. Grande poses a future danger to society to justify the death penalty." *Id.* The Court also specified in *Grande*, that it would admit "any information that is relevant to this determination, including serious assaults on or threats to fellow inmates or correctional staff." *Id.*

In Mr. Rivera's case, however, the Court declines to strike this non-statutory aggravating factor because Mr. Rivera's disci-

plinary record is relevant to whether he poses a future danger to society. The Court will allow in the following disciplinary incidents because they are relevant to Mr. Rivera's alleged threat to society: Mr. Rivera's refusal to follow directives from correctional staff, passing of notes between Mr. Rivera and other MS–13 prisoners, assaults by Mr. Rivera against other prisoners (with the exception of the fight with Inmate Medrano where Mr. Rivera was not charged because, according to the correctional officer, he acted in self-defense), damaging property in the correctional facility and court holding cell, possession of paper with gang graffiti, hiding paper in the vent in his cell with pieces of string from his jumpsuit, kicking or banging on cell walls and doors, hiding a sheet in his jumpsuit, refusal to hand over razor and nail clippers, refusal to walk or move, and defecating on himself requiring correctional officers to cut off his jumpsuit and clean him. The Court will not allow the government to admit the following disciplinary violations: Mr. Rivera's hiding of pencils in his cell because he never used them to threaten or hurt anyone; the time he was helping another inmate shave because nobody was hurt as a result of this infraction and it is not relevant to his future dangerousness; and his request for kosher meals, because it is not relevant to future dangerousness.

8. *Defendant DENIS RIVERA, also known as "Conejo," has demonstrated a lack of remorse toward the death of Brenda Paz, also known as "Smiley," and instead has expressed delight in her death.*

■ The Court denies Mr. Rivera's motion to strike this non-statutory aggravating factor because it finds that Mr. Rivera's Fifth Amendment right to remain silent is not prejudiced or violated by this non-statutory aggravator. Mr. Rivera argues that this aggravator is a violation of

his Fifth Amendment right to remain silent because it asks the jury to "draw a negative inference from his right not to make any statement concerning this matter." Def. Rivera's Suppl. Mem. Supp. at 4. The government, however, has clarified that it does not intend to rely on Mr. Rivera's silence to show his lack of remorse, instead choosing to focus on transcripts of phone conversations and the defendant's own words, where he expresses desire for revenge against government informants and happiness upon learning of Ms. Paz's murder. *See* Gov't Mot. Opp'n at 8. Consequently, the Court denies Defendant Rivera's motion to strike this non-statutory aggravating factor.

### III. CONCLUSION

The Court denies Defendant's motion to strike (1)(d)because the Court rejects Mr. Rivera's argument that (1)(d) is analogous to (1)(a) in the government's Notice of Intent to Seek the Sentence of Death for Mr. Grande. The Court grants Defendant's motion to strike non-statutory aggravators (2) and (4) for the same reasons it did so in *Grande.* 353 F.Supp.2d at 635, 637–38. The Court grants Mr. Rivera's motion to strike (5)(e), but it also grants the government's motion to substitute the alternative language it sets out in its opposition to the defendant's motion because it is clear and unambiguous, remedying the defects in the language addressed in *Grande. See id.* at 640–41. The Court denies the defendant's motion to strike (5)(f) because the vast majority of Mr. Rivera's disciplinary record since incarceration is relevant to whether he poses a continuing threat to society. The Court precludes the government from introducing Mr. Rivera's hiding of pencils not used to threaten or injure anyone, request for kosher meals, and assistance rendered to another inmate when nobody was injured or hurt, because these are not relevant to

Mr. Rivera's alleged continuing threat to society. The court denies Mr. Rivera's motion to strike non-statutory aggravator (8), because the government does not intend to rely on his silence in making a case for Mr. Rivera's lack of remorse for the murder of Ms. Paz. For the foregoing reasons, it is hereby

ORDERED that Defendant's motion to strike is GRANTED as to (2), (4) and (5)(e), but the government's motion to substitute alternative language for (5)(e) is also GRANTED. It is further

ORDERED that Defendant's motion to strike (1)(d), (8) and (5)(f) is granted, but the government will not be permitted to introduce evidence of Mr. Rivera's hiding of pencils, assisting an inmate in shaving, or request for kosher meals in aggravation.

The Clerk is directed to forward a copy of this Order to counsel of record.