UNITED STATES of America,

v.

Ismael Juarez CISNEROS, Defendant.

No. CRIM.A. 04–328.

United States District Court,
E.D. Virginia.
Alexandria Division.

March 24, 2005.

Ronald Walutes, Esquire, Assistant United States Attorney, United States Attorney's Office, Patricia T. Giles, Esquire, Assistant United States Attorney, United States Attorney Office, Alexandria, VA, for Plaintiff.

Nina J. Ginsberg, Esquire, James C. Clark, Esquire, Alexandria, VA, for Defendant.

## *MEMORANDUM OPINION*

LEE, District Judge.

THIS MATTER is before the Court on Defendant Ismael Juarez Cisneros's Supplemental Motion to Strike Non–Statutory Aggravators from the Government's Notice of Intent to Seek the Death Penalty.[1] Defendant Ismael Juarez Cisneros and three others are charged with (1) Conspiracy to Tamper with a Witness or an Informant, 18 U.S.C. § 1512(k), (2) Conspiracy to Retaliate Against a Witness or an Informant, 18 U.S.C. § 1513(e), (3) Killing a Person Aiding a Federal Investigation, 18 U.S.C. §§ 2 & 1121(a)(2), (4) Tampering with a Witness or an Informant, 18 U.S.C. §§ 2 & 1512(a)(1), and (5) Retaliating Against a Witness or an Informant, 18 U.S.C. §§ 2 & 1513(a)(1). The government filed a Notice of Intent to Seek a Sentence of Death against all four defendants on October 1, 2004. In light of the Court's intervening decision in *United States v. Grande*, 353 F.Supp.2d 623 (E.D.Va.2005), addressing a similar motion by co-defendant Oscar Antonio Grande ("Mr. Grande," "Defendant Grande"), and on other grounds, Defendant Ismael Juarez Cisneros challenges various non-statutory aggravating factors asserted by the government pursuant to 18 U.S.C. §§ 3593(a) and(c), and the government's proposed supporting evidence. For the reasons stated below, the Court GRANTS Defendant Ismael Juarez Cisneros's motion to strike:

(1) references to Mr. Cisneros's illegal immigration status in evidence supporting non-statutory aggravator (2) and in non-statutory aggravator (4), but not those found in non-statutory aggravator (1);

(2) non-statutory aggravator (1), but the Court makes it a subheading of non-statutory aggravator (2);

(3) statements of bravado and puffery allegedly made by Mr. Cisneros in support of non-statutory aggravator (2); and

(4) non-statutory aggravator (3), and supporting information (5)(a).

The Court DENIES Mr. Cisneros's motion to strike

(1) the "but not limited to" language in non-statutory aggravating factor (2);

(2) supporting information (2)(a);

(3) unadjudicated conduct from non-statutory aggravator (2), but the Court will instruct the jury it must find Mr. Cisneros committed those offenses beyond a reasonable doubt; and

(4) non-statutory aggravators (7) and (8).

## I. BACKGROUND

In its Notice of Intent to Seek a Sentence of Death ("Notice"), the government states that it will seek to prove nine non-statutory aggravating factors pursuant to 18 U.S.C. §§ 3593(a) and (c) in its effort to seek a death sentence against Mr. Ismael Juarez Cisneros ("Mr. Cisneros," "Defendant"). Mr. Cisneros challenges several non-statutory aggravating factors as a consequence of the Court's decision in *Grande*, as well as other grounds. The following non-statutory aggravators and evidence in support of them are either objected to in Mr. Cisneros's motion or

---

**1.** Defendant Cisneros's Preliminary Motion to Strike Non–Statutory Aggravating Factors will be addressed in a separate order.

were addressed in some manner during oral hearing:

1. Defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," a citizen of Mexico, has repeatedly entered the United States illegally. On or about February 13, 2004, defendant CISNEROS pled guilty to illegal re-entry after deportation.

2. While illegally in the United States, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," has engaged in a pattern of criminal activity including, but not limited to, the following:

(a) On or about August 3, 1999, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," was convicted of carrying a concealed weapon in Fairfax, Virginia.

(b) On or about April 17, 1999, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," stabbed a fifteen-year-old victim four times in the back and once in the wrist at the Fairfax Town Center shopping center in retaliation for the victim preventing co-defendant Oscar Antonio Grande from further assaulting a fellow student at school. On or about August 10, 1999, defendant CISNEROS pled guilty for this conduct, resulting in his deportation by the U.S. Immigration and Naturalization Service on or about May 30, 2000.

(c) On or about August 28, 2001, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," along with four others, stole merchandise valued at more than $200 from Hecht's department store in Manassas, Virginia.

(d) On or about July 2, 2003, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," sold a 12–gauge, pistol-grip shotgun loaded with four rounds of ammunition to a confidential informant.

(e) On or about July 25, 2003, ISMAEL JUAREZ CISNEROS, also known as "Arana," sold a .45 caliber pistol, ammunition, and cocaine to a confidential informant. At this time, defendant CISNEROS also stated that he could acquire hand grenades and would be willing to sell those to the confidential informant.

(f) On or about October 15, 2003, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," sold a .45 caliber pistol and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

(g) On or about October 29, 2003, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," sold a .380 caliber pistol and cocaine to a confidential informant.

(h) On or about November 4, 2003, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," sold a .38 caliber revolver, which was loaded, and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives. At that time, defendant CISNEROS stated his willingness to commit a home invasion/armed robbery and stated that the occupants of the location may need to be murdered during the course of the home invasion/armed robbery. Defendant CISNEROS also stated his desire to be in the prostitution business.

(i) On or about November 18, 2003, officers conducted a search of the residence occupied by defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," and recovered cocaine, tools of the drug trade, and ammunition.

(j) In [sic] or about November 2003, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," made statements to a confidential informant that defendant CISNEROS wanted to shoot a police officer due to the amount of friends that defendant CISNEROS had that were currently incarcerated.

3. Defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," was a member of a criminal street gang as defined by 18 U.S.C. § 521(a), namely the Mara Salvatrucha, also known as "MS–13." As a member of MS–13, defendant CISNEROS agreed to engage in acts of violence, including murder and aggravated assaults. Defendant CISNEROS was a senior member of the Centrales Locos Salvatrucha, or "CLS," clique of MS–13, and as such was an enforcer of the rules of MS–13.

4. Defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," a citizen of Mexico, participated in the murder of Brenda Paz, also known as "Smiley," after he illegally re-entered the United States in or about mid–2001.

5. Defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," poses a future danger based upon the probability that he would commit criminal acts of violence that would constitute a continuing threat to society as demonstrated by, but not limited to, the following:

(a) While in custody at the Arlington County Detention Facility, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," continued to conduct and influence MS–13 gang business occurring outside the correctional institution.

\* \* \* \* \* \*

7. Defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," committed Counts One, Two, Three, Four and Five of the Indictment to prevent Brenda Paz, also known as "Smiley," from and to retaliate against her for assisting in the investigation and prosecution of co-defendant Denis Rivera for the murder of Joaquin Diaz, and in the investigation of other MS–13 members for their criminal activity.

8. Defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," at-tempted to obstruct justice after murdering Brenda Paz, also known as "Smiley," by threatening to kill anyone who revealed to law enforcement details of his and co-defendants Oscar Antonio Grande and Oscar Alexander Garcia–Orellana's departure from the Holiday Inn Fair Oaks with Brenda Paz, also known as "Smiley," on July 13, 2003.

## II. DISCUSSION

### A. Legal Framework

*Basic Sentencing Process and General Principles*

██ In *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), the Supreme Court affirmed that " '[t]he Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be … wantonly and…freakishly imposed.' " *Id.* at 774, 110 S.Ct. 3092 (citing *Gregg v. Georgia*, 428 U.S. 153, 188, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.) (quoting *Furman v. Georgia*, 408 U.S. 238, 310, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring))). Consequently, it is essential that a capital sentencing body's discretion "be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Id.* (quoting *Gregg*, 428 U.S. at 189, 96 S.Ct. 2909). Capital sentencing schemes must " 'channel the sentencer's discretion' by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.' " *Id.* (quoting *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980)).

Sentencing in a federal capital case is composed of two discrete phases. *See* 18 U.S.C. § 3591 *et seq.* The first phase,

"eligibility," requires the factfinder to determine whether the defendant qualifies for the death penalty, while the second phase, "selection," necessitates a decision as to whether a particular defendant "should in fact receive that sentence." *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). In both the eligibility and selection inquiries, the process must be "neutral and principled so as to guard against bias or caprice in the sentencing decision." *Id.* at 973, 114 S.Ct. 2630 (citing *Gregg*, 428 U.S. at 189, 96 S.Ct. 2909) (joint opinion of Stewart, Powell, and Stevens, JJ.).

■ To be eligible for the death penalty in a homicide case, the factfinder must convict the defendant of capital murder, finding the requisite "intent" as delineated in 18 U.S.C. § 3591(a)(2). Next, it must find beyond a reasonable doubt the existence of at least one statutory aggravating factor for which the defendant received notice. *See* 18 U.S.C. §§ 3592(c)(1)—(16) & 3593(c) & (e); *see also Tuilaepa*, 512 U.S. at 971–72, 114 S.Ct. 2630; *U.S. v. Johnson*, 136 F.Supp.2d 553, 557–58 (W.D.Va.2001).

■ If the defendant is eligible for the death penalty, the factfinder proceeds to the selection phase. The jury must weigh aggravating factors proven by a reasonable doubt to the satisfaction of a unanimous jury against mitigating factors proven by a preponderance of the evidence found by at least one juror to make "an *individualized* determination on the basis of the character of the individual and the circumstances of the crime" of whether *this* defendant should receive a death sentence. *Zant v. Stephens*, 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (citations omitted); *see also* 18 U.S.C. §§ 3593(d)-(e) (requiring the factfinder to weigh mitigating and aggravating factors to determine whether a sentence of death is justified and discussing burdens of proof

during sentencing). The aggravating factors may include non-statutory aggravating factors put forth by the government. 18 U.S.C. § 3593(a) (stating that aggravating factors may include "any other relevant information" provided that the government provides notice to the defendant).

### *Non–Statutory Aggravating Factors*

■ The Court plays an important role in ensuring that sentencing is carried out in a manner consistent with the requirements of the Constitution. In other words, the Court's screening of aggravating factors is essential in channeling, directing and limiting the sentencer's discretion to prevent arbitrary and capricious imposition of the death penalty. *See Arave v. Creech*, 507 U.S. 463, 470–71, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993) (discussing the requirements of sentencing schemes). "[A]ggravating circumstances must be construed to permit the sentencer to make a principled distinction between those who deserve the death penalty and those who do not." *Jeffers*, 497 U.S. at 776, 110 S.Ct. 3092 (citation omitted). To come before the sentencer, an aggravating factor cannot be unconstitutionally vague, overbroad, duplicative or irrelevant. *See Tuilaepa*, 512 U.S. at 973, 114 S.Ct. 2630 (vagueness); *Arave*, 507 U.S. at 474, 113 S.Ct. 1534 (overbreadth); *United States v. Tipton*, 90 F.3d 861, 899 (4th Cir.1996) (referencing the reasoning in *United States v. McCullah*, 76 F.3d 1087 (10th Cir.1996) with respect to double-counting); *Gregg*, 428 U.S. at 192, 96 S.Ct. 2909 (relevance); *United States v. Lentz*, 225 F.Supp.2d. 666 (E.D.Va.2002) (discussing vagueness, overbreadth, double-counting, and relevance); *United States v. McVeigh*, 944 F.Supp. 1478, 1486 (D.Co.1996) ("[t]he guiding principles for judicial determination of the validity of particular non-statutory aggravators is the death penalty juris-

prudence developed by the Supreme Court").

Vague and overbroad aggravating circumstances are impermissible. An aggravator is vague if it lacks "some 'commonsense core of meaning...that criminal juries should be capable of understanding.'" *Tuilaepa*, 512 U.S. at 973, 114 S.Ct. 2630 (citing *Jurek v. Texas*, 428 U.S. 262, 279, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (White, J., concurring in judgment)). Vagueness review is "quite deferential" since it "is not susceptible of mathematical precision." *Id.* (citing *Walton v. Arizona*, 497 U.S. 639, 655, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)). A factor is overbroad if "the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty." *Arave*, 507 U.S. at 474, 113 S.Ct. 1534. In other words, if an aggravating factor applies to all defendants convicted of murder, it is unconstitutionally overbroad. *See Tuilaepa*, 512 U.S. at 972, 114 S.Ct. 2630 (stating the factor "may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder").

■ Unconstitutionally irrelevant or duplicative aggravating factors may not come before the jury either. A relevant factor is one that assists the sentencer "in distinguishing 'those who deserve capital punishment from those who do not...'" *McVeigh*, 944 F.Supp. at 1488 (quoting *Arave*, 507 U.S. at 474, 113 S.Ct. 1534). The aggravating factor must be "sufficiently relevant to the inquiry of who should live and who should die" to be considered by the sentencer. *Johnson*, 136 F.Supp.2d at 558 (quoting *United States v. Davis*, 912 F.Supp. 938, 943 (E.D.La.1996)). If the aggravator has only a tangential relationship to a determination of who is more

worthy of receiving a sentence of death, it should be excluded from the sentencer's review. Furthermore, the Federal Death Penalty Act and federal criminal jurisprudence have emphasized that relevant information is "particularized to the individual defendant." *United States v. Chong*, 98 F.Supp.2d 1110, 1116 (D.Hawai'i 1999) (citing *United States v. Frank*, 8 F.Supp.2d 253 (S.D.N.Y.1998)).

■ In addition, duplicative aggravating factors may pose constitutional problems. The Fourth Circuit has reasoned that aggravating factors that duplicate each other are prohibited; "a submission [of multiple overlapping aggravating circumstances]...that permits and results in cumulative findings of more than one of the...circumstances as an aggravating factor is constitutional error." *Tipton*, 90 F.3d at 899 (adopting the Tenth Circuit's reasoning in *McCullah*, 76 F.3d at 1111). The concern is that aggravating factors "that duplicate each other may impermissibly skew a jury in favor of imposing the death penalty." *United States v. Regan*, 228 F.Supp.2d 742, 751 (E.D.Va.2002) (quoting *United States v. Allen*, 247 F.3d 741, 789–90 (8th Cir.2001)). Although the sentencer may review information that duplicates elements of the underlying offense as an aggravating factor, it is constitutional error for the same aggravating factor to be considered by the sentencer more than once, even if dressed in new clothing. *Id.* (citations omitted).

*Admissibility of Information in Support of Aggravating Factors*

■ In deciding whether to admit information regarding aggravating factors at sentencing, the Court must ensure that it is relevant, reliable and less prejudicial than probative. *See* 18 U.S.C. § 3593(c) (relevance, probative versus prejudicial value); *Lockett v. Ohio*, 438 U.S. 586, 604,

98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (heightened reliability requirements in death penalty cases). At the same time, it should lean in favor of admitting as much information as possible to allow the jury to make an individualized determination of whether the defendant merits the death penalty. *Davis*, 912 F.Supp. at 941. The FDPA provides the following guidance:

> The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information [during the penalty phase] is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

18 U.S.C. § 3593(c). In sum, information submitted in the penalty phase must be relevant to the aggravating factors, and its probative value may not be outweighed by the danger of creating unfair prejudice. *Id.* In addition, the information must satisfy the "heightened reliability" requirements of capital sentencing, in light of the finality of the penalty. *See, e.g., Lockett*, 438 U.S. at 604, 98 S.Ct. 2954 ("We are satisfied that this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed"). At the same time, it is " 'desirable' for the jury to have 'as much information before it as possible' when deciding the penalty." *Davis*, 912 F.Supp. at 941 (quoting *Gregg*, 428 U.S. at 204, 96 S.Ct. 2909). Consequently, the Court must struggle with an often cited inherent tension in capital cases—between reliability and providing the jury with as much information as possible to make an individualized determination of whether the defendant merits the death penalty. *See id.* at 941–943 (describing this tension through Supreme Court capital jurisprudence) (citing, *inter alia, Furman*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977)).

## B. Analysis of Non–Statutory Factors

*1. Defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," a citizen of Mexico, has repeatedly entered the United States illegally. On or about February 13, 2004, defendant CISNEROS pled guilty to illegal re-entry after deportation.*

■ The Court grants Mr. Cisneros's motion to strike this non-statutory aggravating factor because a defendant's immigration status is unconstitutionally irrelevant to whether he merits the death penalty. "[A]ggravating circumstances must be construed to permit the sentencer to make a principled distinction between those who deserve the death penalty and those who do not." *Jeffers*, 497 U.S. at 776, 110 S.Ct. 3092 (citation omitted). While a defendant exhibiting a pattern of criminal conduct is more deathworthy than a defendant with no such history, immigration status does not so distinguish two individuals facing the death penalty. Many people, even former felons, return to the United States to be with their loved ones or in search of economic opportunities unavailable in their home countries. Some, on the other hand, may return with more nefarious purposes in mind. Because the circumstances underlying an individual's decision to return to the United States after deportation are wide-ranging, mere immigration status does not serve to adequately distinguish individuals meriting the death penalty from those who do not; it does not sufficiently channel and

direct the jury's discretion in sentencing. *See id.* Illegal re-entry after deportation is a serious offense, but in isolation, it is unconstitutionally irrelevant to whether a person deserves to live or die.

■ After questioning by the Court at oral hearing, the government agreed to change this factor from an independent non-statutory aggravating factor to a sub-heading of non-statutory aggravator (2). The Court agrees with the government's decision to transform this non-statutory aggravating factor into a subheading of non-statutory. aggravating factor (2). It finds that Mr. Cisneros's immigration offense is relevant to whether he engaged in a pattern of adult criminal activity, reliable, and not more prejudicial than probative in making this determination. *See Grande,* 353 F.Supp.2d at 631–32 (explaining the requirements the Court must examine in determining whether supporting information is admissible).

2. *While illegally in the United States, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," has engaged in a pattern of criminal activity including, but not limited to, the following:*

*(a) On or about August 3, 1999, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," was convicted of carrying a concealed weapon in Fairfax, Virginia.*

*(b) On or about April 17, 1999, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," stabbed a fifteen-year-old victim four times in the back and once in the wrist at the Fairfax Town Center shopping center in retaliation for the victim preventing co-defendant Oscar Antonio Grande from further assaulting a fellow student at school. On or about August 10, 1999, defendant CISNEROS pled guilty for this conduct, resulting in his deportation by the U.S. Immigration and Naturalization Service on or about May 30, 2000.*

*(c) On or about August 28, 2001, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," along with four others, stole merchandise valued at more than $200 from Hecht's department store in Manassas, Virginia.*

*(d) On or about July 2, 2003, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," sold a 12–gauge, pistol-grip shotgun loaded with four rounds of ammunition to a confidential informant.*

*(e) On or about July 25, 2003, ISMAEL JUAREZ CISNEROS, also known as "Arana," sold a .45 caliber pistol, ammunition, and cocaine to a confidential informant. At this time, defendant CISNEROS also stated that he could acquire hand grenades and would be willing to sell those to the confidential informant.*

*(f) On or about October 15, 2003, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," sold a .45 caliber pistol and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.*

*(g) On or about October 29, 2003, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," sold a .380 caliber pistol and cocaine to a confidential informant.*

*(h) On or about November 4, 2003, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," sold a .38 caliber revolver, which was loaded, and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives. At that time, defendant CISNEROS stated his willingness to commit a home invasion/armed robbery and stated that the occupants of the location may need to be murdered during the course of the home invasion/armed robbery. Defen-*

dant CISNEROS also stated his desire to be in the prostitution business.

(i) On or about November 18, 2003, officers conducted a search of the residence occupied by defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," and recovered cocaine, tools of the drug trade, and ammunition.

(j) In [sic] or about November 2003, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," made statements to a confidential informant that defendant CISNEROS wanted to shoot a police officer due to the amount of friends that defendant CISNEROS had that were currently incarcerated.

*References to Immigration Status*

The Court strikes all references to Mr. Cisneros's immigration status listed in non-statutory aggravator (2) or its subheadings with the exception of non-statutory aggravator (1) (now a subheading of (2)), for impermissible double-counting. *See Tipton*, 90 F.3d at 899 (adopting the Tenth Circuit's reasoning in *McCullah*, 76 F.3d at 1111); *see also Regan*, 228 F.Supp.2d at 751 (quoting *Allen*, 247 F.3d at 789–90) (stating that aggravating factors "that duplicate each other may impermissibly skew a jury in favor of imposing the death penalty"). To be clear, the Court directs the government to strike the words: "While illegally in the United States" from the heading. It further directs the government to strike the words: "resulting in his deportation by the U.S. Immigration and Naturalization Service on or about May 30, 2000" from subheading (b).

*"But not limited to" language*

▮ The Court rejects Defendant's argument that the "but not limited to" language renders non-statutory aggravating factor (2) unconstitutionally vague because the Court finds that the full text of the factor properly limits the scope of the factor, and it provides the defendant with adequate notice as required by the death penalty statute. The government is not required to spell out the evidence it intends to use during sentencing. *See Higgs*, 353 F.3d at 325 ("The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor…not notice of the specific evidence that will be used to support it"); 18 U.S.C. § 3593(a) (requiring notice of non-statutory aggravating factors, not evidence supporting those factors). Because the words "pattern of criminal activity" have a common sense core of meaning as required by the Constitution—unlawful conduct over the age of eighteen—the Court holds that this non-statutory aggravating factor is not vague despite its use of the words "including, but not limited to." *See United States v. O'Driscoll*, 203 F.Supp.2d 334, 339 (M.D.Pa.2002) (permitting this language in a non-statutory aggravating factor regarding victim impact). In other words, the Court will allow the government to introduce evidence concerning Mr. Cisneros's prior criminal activity so long as it is relevant to the determination of a pattern of criminal activity as an adult justifying the death penalty and its probative value outweighs the danger of creating unfair prejudice, confusing the issues or misleading the jury. *See* 18 U.S.C. § 3593(c); *see also Zant*, 462 U.S. at 888, 103 S.Ct. 2733.

*Analysis of (2)(a)—Guilty Plea for Concealed Weapon*

▮ The Court denies Defendant's motion to strike (2)(a) because it is adjudicated criminal conduct that should come before the jury at sentencing, and it is reliable, relevant and not more prejudicial than probative. *See Zant*, 462 U.S. at 888, 103 S.Ct. 2733 ("Nothing in the United States Constitution prohibits a trial judge from instructing a jury that it would be

appropriate to take account of a defendant's prior criminal record in making its sentencing determination...even though the defendant's prior history of noncapital convictions could not *by itself* provide sufficient justification for imposing the death sentence"); *see also Williams v. New York,* 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed. 1760 (1949) (allowing trial court judges to consider a wide range of factors in sentencing, including past criminal conduct). Defendant argues that "carrying a concealed weapon does not match the degree of seriousness that congress intended the jury to consider in deciding whether a defendant is more deathworthy than other defendants who have committed murder." Def.'s Suppl. Mot. Strike at 6. He further argues that (2)(a) is unconstitutionally vague because "it fails to specify the type of weapon, when or where it was carried, or whether the defendant even threatened its use." *Id.* The Court rejects the defendant's arguments about unconstitutional irrelevance and vagueness because those doctrines apply to freestanding non-statutory aggravators, not the evidence supporting them. While a court must consider whether a non-statutory aggravating factor is unconstitutionally vague, overbroad, duplicative or irrelevant, in determining whether to admit evidence in support of that non-statutory aggravator, it must only consider whether it is relevant to the non-statutory aggravator, whether it is reliable, and whether it is less prejudicial than probative. *See Grande,* 353 F.Supp.2d at 630 (referring to requirements of non-statutory aggravators); see also 18 U.S.C. § 3593(c) (relevance, probative versus prejudicial value); *Lockett,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (discussing heightened reliability requirements in death penalty cases). Mr. Cisneros's guilty plea for carrying a concealed weapon is adjudicated criminal conduct, it is reliable and relevant to whether he engaged in a "pattern of criminal activi-

ty," and it is not more prejudicial than probative. Consequently, the Court denies Mr. Cisneros's motion to strike (2)(a).

### Unadjudicated Conduct

██ The Court denies Mr. Cisneros's request to strike all unadjudicated conduct put forth by the government to prove the non-statutory aggravator of "pattern of criminal activity" because the Fourth Circuit rejected Mr. Cisneros's arguments in *Higgs.* 353 F.3d at 323–24. The government puts forth five instances where Mr. Cisneros allegedly sold guns, ammunition or cocaine to a government confidential informant or undercover agent. One of those sales occurred before Ms. Paz was allegedly murdered and four occur after that date. In addition, the government states that officers discovered cocaine, tools of the drug trade and ammunition in Mr. Cisneros's residence on November 18, 2003.

Mr. Cisneros argues that these instances of unadjudicated conduct should be excluded from the government's Notice for several reasons: (1) the Supreme Court has not resolved the question whether admission of unadjudicated criminal conduct evidence at the penalty phase violates the Eighth and Fourteenth Amendments, (2) sharp conflicts exist among states about whether to admit such evidence at capital sentencing, (3) admitting unadjudicated conduct at sentencing violates congressional intent in passing the FDPA because the FDPA limits the type of adjudicated conduct that qualifies as relevant to capital sentencing, and nowhere mentions unadjudicated conduct, (4) admitting unadjudicated conduct in support of a "pattern of criminal activity" fails to meet the heightened reliability requirements of capital sentencing, (5) it is not clear that unadjudicated conduct must be proven by a reasonable doubt, and (6) Mr. Cisneros's right to a fair and impartial trial, and presumption of innocence, on these unadjudicated crimi-

nal allegations will be violated because a jury that has already determined that Mr. Cisneros is guilty of first-degree murder cannot objectively evaluate allegations of unadjudicated criminal behavior in the penalty phase. *See* Suppl. Mot. Strike Non–Statutory Aggravators at 5–12.

In response, the government asserts that the Fourth Circuit has upheld the use of uncharged and unadjudicated criminal conduct as a non-statutory aggravating factor. Gov't's Resp. Def. Cisneros's Suppl. Mot. (hereinafter "Gov't Resp.") at 5 (citing *Higgs*, 353 F.3d at 323, and *United States v. Sampson*, 275 F.Supp.2d 49 (D.Mass.2003)). The government further argues that the defendant's claim that these unadjudicated crimes do not meet the reliability requirements for capital sentencing is without merit because Mr. Cisneros's drug and gun sales to undercover ATF agents are each captured on audio and video tapes. The government also notes that it provided defense counsel with these tapes, as well as laboratory analyses on the drugs and agent reports. Gov't's Resp. at 6.

The Court denies Mr. Cisneros's motion to strike these instances of unadjudicated conduct because the Fourth Circuit rejected similar arguments in *Higgs*. 353 F.3d at 322–23. Mr. Higgs argued that the district court should have struck a non-statutory aggravating factor alleging obstruction of justice because "only conduct that results in a conviction for listed crimes may constitute an aggravating factor." *Id.* In support of this non-statutory aggravator, the government relied upon uncharged and unadjudicated conduct, including getting rid of the murder weapon, destroying physical evidence, directing witnesses to lie to the police and the grand jury, and planning the elimination of an eyewitnesses. *Id.* The Fourth Circuit held that Mr. Higgs' argument was "plainly without merit." *Id.* In particular, it found

that even though the FDPA specifies certain kinds of convicted criminal conduct that may be used for statutory aggravating factors, it also states that "[t]he jury may consider whether any other aggravating factor for which notice has been given exists" during the selection phase of capital sentencing. *Id.* (citing 18 U.S.C. § 3592(c)). As in *Higgs*, the government has provided adequate notice of its intent to examine these instances of alleged criminal conduct at trial. *See id.; see also* Notice at 4–5. In addition, these instances of alleged conduct are relevant to the non-statutory aggravating factor of whether Mr. Cisneros engaged in a "pattern of criminal activity." *See* Notice at 3. They also comply with the requirements of 18 U.S.C. § 3593(c) because they are not more prejudicial than probative, confusing of the issues or misleading to the jury. *Id.* Furthermore, to make sure that the requisite indicia of reliability are met, the Court will instruct the jurors that they must conclude beyond a reasonable doubt that each of these offenses occurred in determining whether Mr. Cisneros was engaged in a pattern of criminal activity. *See Higgs*, 353 F.3d at 323 (rejecting Mr. Higgs' assertion that introduction of the evidence was prohibited by the Fifth, Sixth and Eighth Amendments because the jury was instructed that the government had to prove the unadjudicated conduct by a reasonable doubt). Consequently, the Court denies Mr. Cisneros's motion to strike the unadjudicated conduct from the Notice, and notes that it will instruct the jury that it must find each instance of unadjudicated conduct by a reasonable doubt to consider it in determining whether Mr. Cisneros exhibits a pattern of criminal activity.

*Unsupported Bravado in Subheadings*

█ The Court strikes statements made by Mr. Cisneros to confidential informants or undercover agents that are bravado and significantly more prejudicial than probative from the information sub-

mitted in support of non-statutory aggravator (2). *See* 18 U.S.C. 3592(c) ("information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury"). Mr. Cisneros's statements that he could acquire hand grenades and was willing to sell them, he was willing to commit a home invasion or armed robbery and murder the inhabitants if necessary, he hoped to join the prostitution business, and he wanted to shoot a police officer because many of his friends were incarcerated are puffery and bravado. Because the government has submitted no evidence whatsoever to the Court that Mr. Cisneros ever followed through in any way on these statements, the Court finds them significantly more prejudicial than probative and directs the government to strike them from the Notice.

*3. Defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," was a member of a criminal street gang as defined by 18 U.S.C. § 521(a), namely the Mara Salvatrucha, also known as "MS–13." As a member of MS–13, defendant CISNEROS agreed to engage in acts of violence, including murder and aggravated assaults. Defendant CISNEROS was a senior member of the Centrales Locos Salvatrucha, or "CLS," clique of MS–13, and as such was an enforcer of the rules of MS–13.*

██ The Court strikes this non-statutory aggravating factor from the Notice because it does not assist the jury in making an *individualized* determination of whether Mr. Cisneros should receive the death penalty. *See Grande*, 353 F.Supp.2d at 638 (striking nearly identical non-statutory aggravating factor). "What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant*, 462 U.S. at 879, 103 S.Ct. 2733 (emphasis in original).

Mr. Cisneros's membership in a gang will be more than obvious to the jury; he and his three co-defendants are all admittedly members of MS–13 and all four defendants are being tried jointly for the murder of a government informant who was also a member of MS–13. The purpose of the selection phase of sentencing is to focus on *this* individual's characteristics, not on the possible guilt of those with whom he associated. The non-statutory aggravating factor conflates the two: "As a member of MS–13, defendant CISNEROS agreed to engage in acts of violence, including murder and aggravated assaults." Notice at 5. Furthermore, the Court is concerned about reliability with respect to this proposed non-statutory aggravating factor. It makes generalized statements about MS–13 as a group, including allegations of MS–13 engaging in uncharged murders and assaults, that are difficult, if not impossible, to cross-examine and which do not refer to Mr. Cisneros's individual acts or intentions in joining the gang. There has been a great deal of negative publicity in the news media associating MS–13 with violent acts including maiming victims with machetes, gang beatings, and assaults against female victims, as well as a recent national law enforcement sweep of MS–13 members. The jury in this case is charged with rendering a verdict as to the conduct of Ismael Juarez Cisneros on a particular date, not the conduct of all members of MS–13 for an unlimited period of time. Consequently, the Court grants the defendant's motion to strike non-statutory aggravating factor number (3).

*4. Defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," a citizen of Mexico, participated in the murder of Brenda Paz, also known as "Smiley," after he illegally re-entered the United States in or about mid–2001.*

For the reasons stated above for striking repeated references to Mr. Cisneros's

immigration status, the Court strikes from this non-statutory aggravating factor the words "a citizen of Mexico" and "after he illegally re-entered the United States."

5. *Defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," poses a future danger based upon the probability that he would commit criminal acts of violence that would constitute a continuing threat to society as demonstrated by, but not limited to, the following:*

*(a) While in custody at the Arlington County Detention Facility, defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," continued to conduct and influence MS–13 gang business occurring outside the correctional institution.*

■ The Court grants Defendant's motion to strike (5)(a) because the phrase "continued to conduct and influence MS–13 gang business" is vague and undefined, and thus, is more prejudicial than probative to whether Mr. Cisneros poses a future danger to society, and it will be confusing and misleading to the jury if permitted. *See Grande,* 353 F.Supp.2d at 640. The government has not defined what "gang business" is or what it means to "conduct and influence" gang business. Although the government is not required to present all the evidence it will use in support of an aggravating factor, the evidence in support of an aggravating factor must be reliable, must not mislead the jury or confuse the issues, and it must be more probative than prejudicial. 18 U.S.C. § 3593(c). Here, the vagueness of the words "gang business" confuses the issues and may be misleading to the jury. "Gang business" is not, of necessity, criminal. Having a conversation with a fellow gang member does not necessarily constitute a crime. Similarly, the meaning of "conduct and influence" is also unclear. Finally, as previously stated, the purpose of the sentencing phase is to determine whether this defendant is eligible for and

deserving of the death penalty, not to try Mr. Cisneros's gang membership in and of itself or the gang he was a member of. Consequently, the Court grants Defendant's motion to strike (5)(a) from the Notice.

7. *Defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," committed Counts One, Two, Three, Four and Five of the Indictment to prevent Brenda Paz, also known as "Smiley," from and to retaliate against her for assisting in the investigation and prosecution of co-defendant Denis Rivera for the murder of Joaquin Diaz, and in the investigation of other MS–13 members for their criminal activity.*

The Court denies Defendant's motion to strike this factor for impermissible double counting because the Fourth Circuit and the Supreme Court have rejected the argument that aggravating factors may not duplicate elements of the offense. *See Higgs,* 353 F.3d at 315 ("…the Eighth Amendment does not prohibit the use of an aggravating factor during the sentencing phases that duplicates one or more elements of the offense of the crime found at the guilt phase") (citing *Lowenfield v. Phelps,* 484 U.S. 231, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)); *see also Grande,* 353 F.Supp.2d at 640–41 (striking nearly identical supporting information).

8. *Defendant ISMAEL JUAREZ CISNEROS, also known as "Arana," attempted to obstruct justice after murdering Brenda Paz, also known as "Smiley," by threatening to kill anyone who revealed to law enforcement details of his and co-defendants Oscar Antonio Grande and Oscar Alexander Garcia–Orellana's departure from the Holiday Inn Fair Oaks with Brenda Paz, also known as "Smiley," on July 13, 2003.*

■ The Court denies Defendant's motion to strike this aggravating factor be-

cause obstruction of justice with respect to the underlying offense is a proper non-statutory aggravating factor, and it is not unconstitutionally duplicative, despite Mr. Cisneros's argument to the contrary. *See Grande,* 353 F.Supp.2d at 641 (denying Mr. Grande's motion to strike a virtually identical non-statutory aggravating factor); *see also Higgs,* 353 F.3d at 322–323 (holding that attempts to obstruct justice "were highly relevant aggravating circumstances which were properly submitted to the jury"). The Court rejects Defendant's argument that non-statutory aggravator (8) is unconstitutionally duplicative because aggravator (8) is not cumulative of other factors. *See Tipton,* 90 F.3d at 899 (adopting the Tenth Circuit's reasoning in *McCullah,* 76 F.3d at 1111). Mr. Cisneros's alleged threats to persons who might divulge details about his departure from the Holiday Inn Fair Oaks with two of his co-defendants and the alleged victim are not duplicated elsewhere in the Notice. Consequently, the Court denies Mr. Cisneros's motion to strike non-statutory aggravating factor (8).

### III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Defendant's Motion to Strike Non–Statutory Aggravating Factors is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED

that Defendant's motion to strike is DENIED as to

(1) unadjudicated conduct in non-statutory aggravator (2), but the Court will instruct the jury it must find Mr. Cisneros committed those offenses beyond a reasonable doubt;

(2) the "but not limited to" language in non-statutory aggravating factor (2);

(3) supporting information (2)(a); and

(4) non-statutory aggravators (7) and (8).

It is further

ORDERED that the defendant's motion to strike is GRANTED as to

(1) references to Mr. Cisneros's illegal immigration status in evidence supporting non-statutory aggravator (2) and in non-statutory aggravator (4), but not those found in non-statutory aggravator (1);

(2) non-statutory aggravator (1), but the Court makes it a subheading of non-statutory aggravator (2);

(3) statements of bravado and puffery allegedly made by Mr. Cisneros in support of non-statutory aggravator (2); and

(4) non-statutory aggravator (3), and supporting information (5)(a).

The government is DIRECTED to:

(1) Transform non-statutory aggravating factor (1) into evidence in support of non-statutory aggravating factor (2);

(2) Strike any references to Mr. Cisneros's immigration status from the Notice, deportation proceedings, or Mexican citizenship apart from what was formerly non-statutory aggravating factor (1), including the first clause of non-statutory aggravator (2), the last clause of (2)(b), and the words "a citizen of Mexico" and "after he illegally reentered the United States in or about mid–2001" of non-statutory aggravator (4);

(3) Strike all statements of puffery and bravado from the evidence listed in support of non-statutory aggravator (2), including the last sentence of 2(e), the second and third sentences of (2)(h), and (2)(j) in its entirety; and

(4) Strike non-statutory aggravators (3) and (5)(a).

The Clerk is directed to forward a copy of this Order to counsel of record.